702 S.W.2d 326 (1985)
In the Matter of the ARKANSAS BAR ASSOCIATION: Petition For the Adoption of Model Rules of Professional Conduct.
No. 83-187.
Supreme Court of Arkansas.
December 16, 1985.
PER CURIAM.
The Arkansas Bar Association, through its Special Committee on the Model Rules of Professional Conduct[1], has petitioned this court to adopt the Model Rules of Professional Conduct promulgated by the American Bar Association and approved by the House of Delegates of that body on August 2, 1983, subject to certain amendments recommended by the Special Committee and endorsed by the Arkansas Bar Association on January 19, 1985 after a thorough study and review among the bar of Arkansas.
The Model Rules, as amended, would replace the existing Code of Professional Responsibility adopted by this court effective July 1, 1976 (see Per Curiam order of June 21, 1976, 260 Ark. 910).
By Per Curiam Order of May 6, 1985, we invited interested parties to file objections to the proposed Model Rules and allowed time for that to be done. No objections have been filed. We note that the Supreme Court Committee on Professional Conduct has filed comments on the proposed rules describing the Model Rules as a definite improvement over the present rules and urging their adoption.
In view of the thorough study they have received, we find the Model Rules of Professional Conduct should be, and they are hereby, approved as amended, to become effective January 1, 1986. Appended to this order, and made a part hereof by reference, are Exhibit B to the Petition of the Arkansas Bar Association outlining the changes approved by the Arkansas Bar Association by amendment to the Model Rules of the American Bar Association. Also appended hereto, and made a part hereof by reference, is Exhibit C to said Petition which incorporates those changes into the Model Rules. Both exhibits shall be published as an appendix hereto.
IT IS SO ORDERED.
PURTLE, J., not participating.

APPENDIX

EXHIBIT B

CHANGES IN AMERICAN BAR VERSION
1. Rule 1.5 Comment addition as follows (to be inserted as the first Comment sentence): This rule is designed to prohibit only unreasonably high fees and is not to be construed as prohibiting free services, reduced fees or pro bono legal services.
2. Rule 1.6(b)(1) In lieu of present (1) insert following: "to prevent the client from committing a criminal act; or"
3. Rule 1.6(c) New insertion. Neither this Rule nor Rule 1.8(b) nor Rule 1.16(d) prevents the lawyer from giving notice of the fact of withdrawal, and the lawyer may also withdraw or disaffirm any opinion, *327 document, affirmation or the like. Delete the second sentence of the second paragraph under "withdrawal" in the Comment which is the identical language of the new insertion in the Rule.
4. Rule 3.5(b) Amended to read as follows: Communicate ex parte with such a person on the merits of the cause except as permitted by law; or
5. Rule 3.7(b) Strike 3.7(b). The designation of (a) should be deleted and all references to (a) in the Comment should be deleted (there are two references in paragraph 3 and one reference in paragraph 4, and one reference in the second paragraph under "Code Comparison." The fifth paragraph of the Comment should be deleted.
6. Rule 3.8 Comment addition to read as follows (to be inserted as a fourth paragraph immediately before "Code Comparison"): The issuance of a grand jury indictment ordinarily indicates probable cause for the prosecutor to proceed. This rule does not affect the refusal of the prosecutor to proceed. This rule covers the Attorney General and staff, Prosecuting Attorneys and staffs, City Attorneys and staffs and all others who exercise prosecutorial functions.
7. Rule 7.3 Addition to read as follows: Written communications shall be clearly marked "advertising" and copies thereof must be kept for five years.[*]
8. Rule 7.4(c) Addition to read as follows: A lawyer who has been recognized as a specialist under the Arkansas Plan of Specialization approved by the Arkansas Supreme Court may communicate the fact during the period that he or she is a "Board Recognized Specialist in (insert field in which recognized) Law" under the plan.
9. Rule 8.5 JurisdictionA lawyer admitted to practice or practicing in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere.

EXHIBIT C

American Bar Association

Model Rules of Professional Conduct[*]
The Model Rules of Professional Conduct were adopted by the House of Delegates of the American Bar Association on August 2, 1983.

 CONTENTS
 Page
Preamble 328
Scope 330
Terminology 331
 CLIENT-LAWYER RELATIONSHIP
Rule
1.1 Competence 332
1.2 Scope of Representation 333
1.3 Diligence 335
1.4 Communication 336
1.5 Fees 337
1.6 Confidentiality of Information 339
1.7 Conflict of Interest:
 General Rule 343
1.8 Conflict of Interest: Prohibited
 Transactions 346
1.9 Conflict of Interest: Former Client 348
1.10 Imputed Disqualification: General
 Rule 349
1.11 Successive Government and Private
 Employment 352
1.12 Former Judge or Arbitrator 354
1.13 Organization as the Client 355
1.14 Client Under a Disability 358
1.15 Safekeeping Property 359
1.16 Declining or Terminating
 Representation 360
 COUNSELOR
2.1 Advisor 361
2.2 Intermediary 362
2.3 Evaluation for Use by Third Persons 364

*328
 ADVOCATE
 Page
3.1 Meritorious Claims and Contentions 366
3.2 Expediting Litigation 366
3.3 Candor Toward the Tribunal 367
3.4 Fairness to Opposing Party and
 Counsel 370
3.5 Impartiality and Decorum of the
 Tribunal 371
3.6 Trial Publicity 372
3.7 Lawyer as Witness 373
3.8 Special Responsibilities of a
 Prosecutor 374
3.9 Advocate in Nonadjudicative
 Proceedings 375
 TRANSACTIONS WITH PERSONS OTHER
 THAN CLIENTS
4.1 Truthfulness in Statements to
 Others 376
4.2 Communication with Person
 Represented by Counsel 376
4.3 Dealing with Unrepresented Person 377
4.4 Respect for Rights of Third Persons 377
 LAW FIRMS AND ASSOCIATIONS
5.1 Responsibilities of a Partner or
 Supervisory Lawyer 377
5.2 Responsibilities of a Subordinate
 Lawyer 379
5.3 Responsibilities Regarding
 Nonlawyer Assistants 379
5.4 Professional Independence of a
 Lawyer 380
5.5 Unauthorized Practice of Law 381
5.6 Restrictions on Right to Practice 381
 PUBLIC SERVICE
6.1 Pro Bono Publico Service 382
6.2 Accepting Appointments 382
6.3 Membership in Legal Services
 Organization 383
6.4 Law Reform Activities Affecting
 Client Interests 384
 INFORMATION ABOUT
 LEGAL SERVICES
7.1 Communications Concerning a
 Lawyer's Services 384
7.2 Advertising 385
7.3 Direct Contact with Prospective
 Clients 386
7.4 Communication of Fields of Practice 388
7.5 Firm Names and Letterheads 388
 MAINTAINING THE INTEGRITY
 OF THE PROFESSION
 Page
8.1 Bar Admission and Disciplinary
 Matters 389
8.2 Judicial and Legal Officials 390
8.3 Reporting Professional Misconduct 391
8.4 Misconduct 391
8.5 Jurisdiction 392

PREAMBLE: A LAWYER'S RESPONSIBILITIES
A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice.
As a representative of clients, a lawyer performs various functions. As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system. As negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealing with others. As intermediary between clients, a lawyer seeks to reconcile their divergent interests as an advisor and, to a limited extent, as a spokesperson for each client. A lawyer acts as evaluator by examining a client's legal affairs and reporting about them to the client or to others.
In all professional functions a lawyer should be competent, prompt and diligent. A lawyer should maintain communication with a client concerning the representation. A lawyer should keep in confidence information relating to representation of a client except so far as disclosure is required or permitted by the Rules of Professional Conduct or other law.
A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other *329 lawyers and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.
As a public citizen, a lawyer should seek improvement of the law, the administration of justice and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law and work to strengthen legal education. A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance, and should therefore devote professional time and civic influence in their behalf. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest.
Many of a lawyer's professional responsibilities are prescribed in the Rules of Professional Conduct, as well as substantive and procedural law. However, a lawyer is also guided by personal conscience and the approbation of professional peers. A lawyer should strive to attain the highest level of skill, to improve the law and the legal profession and to exemplify the legal profession's ideals of public service.
A lawyer's responsibilities as a representative of clients, an officer of the legal system and a public citizen are usually harmonious. Thus, when an opposing party is well represented, a lawyer can be a zealous advocate on behalf of a client and at the same time assume that justice is being done. So also, a lawyer can be sure that preserving client confidences ordinarily serves the public interest because people are more likely to seek legal advice, and thereby heed their legal obligations, when they know their communications will be private.
In the nature of law practice, however, conflicting responsibilities are encountered. Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an upright person while earning a satisfactory living. The Rules of Professional Conduct prescribe terms for resolving such conflicts. Within the framework of these Rules many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the Rules.
The legal profession is largely self-governing. Although other professions also have been granted powers of self-government, the legal profession is unique in this respect because of the close relationship between the profession and the processes of government and law enforcement. This connection is manifested in the fact that ultimate authority over the legal profession is vested largely in the courts.
To the extent that lawyers meet the obligations of their professional calling, the occasion for government regulation is obviated. Self-regulation also helps maintain the legal profession's independence from government domination. An independent legal profession is an important force in preserving government under law, for abuse of legal authority is more readily challenged by a profession whose members are not dependent on government for the right to practice.
The legal profession's relative autonomy carries with it special responsibilities of self-government. The profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar. Every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves.
Lawyers play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of *330 their relationship to our legal system. The Rules of Professional Conduct, when properly applied, serve to define that relationship.

SCOPE
The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the Rules are imperatives, cast in the terms "shall" or "shall not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the Rules in which the lawyer has professional discretion. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of such discretion. Other Rules define the nature of relationships between the lawyer and others. The Rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role. Many of the Comments use the term "should." Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules.
The Rules presuppose a larger legal context shaping the lawyer's role. That context includes court rules and statutes relating to matters of licensure, laws defining specific obligations of lawyers and substantive and procedural law in general. Compliance with the Rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion and finally, when necessary, upon enforcement through disciplinary proceedings. The Rules do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules. The Rules simply provide a framework for the ethical practice of law.
Furthermore, for purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these Rules determine whether a client-lawyer relationship exists. Most of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the" lawyer has agreed to do so. But there are some duties, such as that of confidentiality under Rule 1.6, that may attach when the lawyer agrees to consider whether a client-lawyer relationship shall be established. Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact.
Under various legal provisions, including constitutional, statutory and common law, the responsibilities of government lawyers may include authority concerning legal matters that ordinarily reposes in the client in private client-lawyer relationships. For example, a lawyer for a government agency may have authority on behalf of the government to decide upon settlement or whether to appeal from an adverse judgment. Such authority in various respects is generally vested in the attorney general and the state's attorney in state government, and their federal counterparts, and the same may be true of other government law officers. Also, lawyers under the supervision of these officers may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients. They also may have authority to represent the "public interest" in circumstances where a private lawyer would not be authorized to do so. These Rules do not abrogate any such authority.
Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process. The Rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question and in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the Rules presuppose that *331 whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations.
Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.
Moreover, these Rules are not intended to govern or affect judicial application of either the attorney-client or work product privilege. Those privileges were developed to promote compliance with law and fairness in litigation. In reliance on the attorney-client privilege, clients are entitled to expect that communications within the scope of the privilege will be protected against compelled disclosure. The attorney-client privilege is that of the client and not of the lawyer. The fact that in exceptional situations the lawyer under the Rules has a limited discretion to disclose a client confidence does not vitiate the proposition that, as a general matter, the client has a reasonable expectation that information relating to the client will not be voluntarily disclosed and that disclosure of such information may be judicially compelled only in accordance with recognized exceptions to the attorney-client and work product privileges.
The lawyer's exercise of discretion not to disclose information under Rule 1.6 should not be subject to reexamination. Permitting such reexamination would be incompatible with the general policy of promoting compliance with law through assurances that communications will be protected against disclosure.
The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule. The Preamble and this note on Scope provide general orientation. The Comments are intended as guides to interpretation, but the text of each Rule is authoritative. Research notes were prepared to compare counterparts in the ABA Model Code of Professional Responsibility (adopted 1969, as amended) and to provide selected references to other authorities. The notes have not been adopted, do not constitute part of the Model Rules, and are not intended to affect the application or interpretation of the Rules and Comments.

TERMINOLOGY
"Belief" or "Believes" denotes that the person involved actually supposed the fact in question to be true. A person's belief may be inferred from circumstances.
"Consult" or "Consultation" denotes communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question.
"Firm" or "Law firm" denotes a lawyer or lawyers in a private firm, lawyers employed in the legal department of a corporation or other organization and lawyers employed in a legal services organization. See Comment, Rule 1.10.
"Fraud" or "Fraudulent" denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information.
"Knowingly," "Known," or "Knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.
*332 "Partner" denotes a member of a partnership and a shareholder in a law firm organized as a professional corporation.
"Reasonable" or "Reasonably" when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer.
"Reasonable belief" or "Reasonably believes" when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable.
"Reasonably should know" when used in reference to a lawyer denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question.
"Substantial" when used in reference to degree or extent denotes a material matter of clear and weighty importance.

Model Rules of Professional Conduct

CLIENT-LAWYER RELATIONSHIP
RULE 1.1 Competence
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
COMMENT:
Legal Knowledge and Skill
In determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, the preparation and study the lawyer is able to give the matter and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question. In many instances, the required proficiency is that of a general practitioner. Expertise in a particular field of law may be required in some circumstances.
A lawyer need not necessarily have special training or prior experience to handle legal problems of a type with which the lawyer is unfamiliar. A newly admitted lawyer can be as competent as a practitioner with long experience. Some important legal skills, such as the analysis of precedent, the evaluation of evidence and legal drafting, are required in all legal problems. Perhaps the most fundamental legal skill consists of determining what kind of legal problems a situation may involve, a skill that necessarily transcends any particular specialized knowledge. A lawyer can provide adequate representation in a wholly novel field through necessary study. Competent representation can also be provided through the association of a lawyer of established competence in the field in question.
In an emergency a lawyer may give advice or assistance in a matter in which the lawyer does not have the skill ordinarily required where referral to or consultation or association with another lawyer would be impractical. Even in an emergency, however, assistance should be limited to that reasonably necessary in the circumstances, for ill considered action under emergency conditions can jeopardize the client's interest.
A lawyer may accept representation where the requisite level of competence can be achieved by reasonable preparation. This applies as well to a lawyer who is appointed as counsel for an unrepresented person. See also Rule 6.2.
Thoroughness and Preparation
Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more elaborate treatment than matters of lesser consequence.
Maintaining Competence
To maintain the requisite knowledge and skill, a lawyer should engage in continuing study and education. If a system of peer review has been established, the lawyer *333 should consider making use of it in appropriate circumstances.
CODE COMPARISON:
DR 6-101(A)(1) provides that a lawyer shall not handle a matter "which he knows or should know that he is not competent to handle, without associating himself with a lawyer who is competent to handle it." DR 6-101(A)(2) requires "preparation adequate in the circumstances"; Rule 1.1 more fully particularizes the elements of competence.
RULE 1.2 Scope of Representation
(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.
(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.
(c) A lawyer may limit the objectives of the representation if the client consents after consultation.
(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.
(e) When a lawyer knows that a client expects assistance not permitted by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.
COMMENT:
Scope of Representation
Both lawyer and client have authority and responsibility in the objectives and means of representation. The client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations. Within those limits, a client also has a right to consult with the lawyer about the means to be used in pursuing those objectives. At the same time, a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so. A clear distinction between objectives and means sometimes cannot be drawn, and in many cases the client-lawyer relationship partakes of a joint undertaking. In questions of means, the lawyer should assume responsibility for technical and legal tactical issues, but should defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected. Law defining the lawyer's scope of authority in litigation varies among jurisdictions.
In a case in which the client appears to be suffering mental disability, the lawyer's duty to abide by the client's decisions is to be guided by reference to Rule 1.14.
Independence from Client's Views or Activities
Legal representation should not be denied to people who are unable to afford legal services, or whose cause is controversial or the subject of popular disapproval. By the same token, representing a client does not constitute approval of the client's views or activities.
Services Limited in Objectives or Means
The objectives or scope of services provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. For example, a retainer may be for a specifically defined purpose. Representation provided through a legal aid agency may be subject to limitations on *334 the types of cases the agency handles. When a lawyer has been retained by an insurer to represent an insured, the representation may be limited to matters related to the insurance coverage. The terms upon which representation is undertaken may exclude specific objectives or means. Such limitations may exclude objectives or means that the lawyer regards as repugnant or imprudent.
An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and other law. Thus, the client may not be asked to agree to representation so limited in scope as to violate Rule 1.1, or to surrender the right to terminate the lawyer's services or the right to settle litigation that the lawyer might wish to continue.
Criminal, Fraudulent and Prohibited Transactions
A lawyer is required to give an honest opinion about the actual consequences that appear likely to result from a client's conduct. The fact that a client uses advice in a course of action that is criminal or fraudulent does not, of itself, make a lawyer a party to the course of action. However, a lawyer may not knowingly assist a client in criminal or fraudulent conduct. There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity.
When the client's course of action has already begun and is continuing, the lawyer's responsibility is especially delicate. The lawyer is not permitted to reveal the client's wrongdoing, except where permitted by Rule 1.6. However, the lawyer is required to avoid furthering the purpose, for example, by suggesting how it might be concealed. A lawyer may not continue assisting a client in conduct that the lawyer originally supposes is legally proper but then discovers is criminal or fraudulent. Withdrawal from the representation, therefore, may be required.
Where the client is a fiduciary, the lawyer may be charged with special obligations in dealings with a beneficiary.
Paragraph (d) applies whether or not the defrauded party is a party to the transaction. Hence, a lawyer should not participate in a sham transaction; for example, a transaction to effectuate criminal or fraudulent escape of tax liability. Paragraph (d) does not preclude undertaking a criminal defense incident to a general retainer for legal services to a lawful enterprise. The last clause of paragraph (d) recognizes that determining the validity or interpretation of a statute or regulation may require a course of action involving disobedience of the statute or regulation or of the interpretation placed upon it by governmental authorities.
CODE COMPARISON:
Rule 1.2(a) has no counterpart in the Disciplinary Rules of the Code. EC 7-7 states that "In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client...." EC 7-8 states that "In the final analysis, however, the ... decision whether to forego legally available objectives or methods because of nonlegal factors is ultimately for the client.... In the event that the client in a nonadjudicatory matter insists upon a course of conduct that is contrary to the judgment and advice of the lawyer but not prohibited by Disciplinary Rules, the lawyer may withdraw from the employment." DR 7-101(A)(1) provides that "A lawyer shall not intentionally ... fail to seek the lawful objectives of his client through reasonably available means permitted by law.... A lawyer does not violate this Disciplinary Rule, however, by ... avoiding offensive tactics...."
Rule 1.2(b) has no counterpart in the Code.
Rule 1.2(c) has no counterpart in the Code.
*335 With regard to paragraph (d), DR 7-102(A)(7) provides that a lawyer shall not "counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent." DR 7-102(A)(6) provides that a lawyer shall not "participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false." DR 7-106 provides that "A lawyer shall not... advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal... but he may take appropriate steps in good faith to test the validity of such rule or ruling." EC 7-5 states that "A lawyer should never encourage or aid his client to commit criminal acts or counsel his client on how to violate the law and avoid punishment therefor."
With regard to Rule 1.2(e), DR 2-110(C)(1)(c) provides that a lawyer may withdraw from representation if a client "insists" that the lawyer engage in "conduct that is illegal or that is prohibited under the Disciplinary Rules." DR 9-101(C) provides that "a lawyer shall not state or imply that he is able to influence improperly ... any tribunal, legislative body or public official."
RULE 1.3 Diligence
A lawyer shall act with reasonable diligence and promptness in representing a client.
COMMENT:
A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. However, a lawyer is not bound to press for every advantage that might be realized for a client. A lawyer has professional discretion in determining the means by which a matter should be pursued. See Rule 1.2. A lawyer's workload should be controlled so that each matter can be handled adequately.
Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed. Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness.
Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved. If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so. For example, if a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client but has not been specifically instructed concerning pursuit of an appeal, the lawyer should advise the client of the possibility of appeal before relinquishing responsibility for the matter.
CODE COMPARISON:
DR 6-101(A)(3) requires that a lawyer not "neglect a matter entrusted to him." EC 6-4 states that a lawyer should "give appropriate attention to his legal work." Canon 7 states that "a lawyer should represent a client zealously within the bounds of law." DR 7-101(A)(1) provides that "a lawyer shall not intentionally ... fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules...." DR 7-101(A)(3) provides that "a lawyer shall not intentionally ... prejudice or damage *336 his client during the course of the relationship...."
RULE 1.4 Communication
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
COMMENT:
The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. For example, a lawyer negotiating on behalf of a client should provide the client with facts relevant to the matter, inform the client of communications from another party and take other reasonable steps that permit the client to make a decision regarding a serious offer from another party. A lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case should promptly inform the client of its substance unless prior discussions with the client have left it clear that the proposal will be unacceptable. See Rule 1.2(a). Even when a client delegates authority to the lawyer, the client should be kept advised of the status of the matter.
Adequacy of communication depends in part on the kind of advice or assistance involved. For example, in negotiations where there is time to explain a proposal, the lawyer should review all important provisions with the client before proceeding to an agreement. In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might injure or coerce others. On the other hand, a lawyer ordinarily cannot be expected to describe trial or negotiation strategy in detail. The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation.
Ordinarily, the information to be provided is that appropriate for a client who is a comprehending and responsible adult. However, fully informing the client according to this standard may be impracticable, for example, where the client is a child or suffers from mental disability. See Rule 1.14. When the client is an organization or group, it is often impossible or inappropriate to inform every one of its members about its legal affairs; ordinarily, the lawyer should address communications to the appropriate officials of the organization. See Rule 1.13. Where many routine matters are involved, a system of limited or occasional reporting may be arranged with the client. Practical exigency may also require a lawyer to act for a client without prior consultation.
Withholding Information
In some circumstances, a lawyer may be justified in delaying transmission of information when the client would be likely to react imprudently to an immediate communication. Thus, a lawyer might withhold a psychiatric diagnosis of a client when the examining psychiatrist indicates that disclosure would harm the client. A lawyer may not withhold information to serve the lawyer's own interest or convenience. Rules or court orders governing litigation may provide that information supplied to a lawyer may not be disclosed to the client. Rule 3.4(c) directs compliance with such rules or orders.
CODE COMPARISON:
This Rule has no direct counterpart in the Disciplinary Rules of the Code. DR 6-101(A)(3) provides that a lawyer shall not "neglect a legal matter entrusted to him." DR 9-102(B)(1) provides that a lawyer "shall promptly notify a client of the receipt of his funds, securities, or other properties." EC 7-8 states that "a lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant *337 considerations." EC 9-2 states that "a lawyer should fully and promptly inform his client of material developments in the matters being handled for the client."
RULE 1.5 Fees
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
(b) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(d) A lawyer shall not enter into an arrangement for, charge, or collect:
(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(2) a contingent fee for representing a defendant in a criminal case.
(e) A division of fee between lawyers who are not in the same firm may be made only if:
(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;
(2) the client is advised of and does not object to the participation of all the lawyers involved; and
(3) the total fee is reasonable.
COMMENT:
Basis or Rate of Fee
This rule is designed to prohibit only unreasonably high fees and is not to be construed as prohibiting free services, reduced fees or pro bono legal services.
When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee, but only those that are directly involved in its computation. It is sufficient, for example, to state that the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally *338 fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is set forth.
Terms of Payment
A lawyer may require advance payment of a fee, but is obliged to return any unearned portion. See Rule 1.16(d). A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to Rule 1.8(j). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer's special knowledge of the value of the property.
An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client's ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client's best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.
Division of Fee
A division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Paragraph (e) permits the lawyers to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does not require disclosure to the client of the share that each lawyer is to receive. Joint responsibility for the representation entails the obligations stated in Rule 5.1 for purposes of the matter involved.
Disputes over Fees
If a procedure has been established for resolution of fee disputes, such as an arbitration or mediation procedure established by the bar, the lawyer should conscientiously consider submitting to it. Law may prescribe a procedure for determining a lawyer's fee, for example, in representation of an executor or administrator, a class or a person entitled to a reasonable fee as part of the measure of damages. The lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.
CODE COMPARISON:
DR 2-106(A) provides that "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." DR 2-106(B) provides that "A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." DR 2-106(B) further provides that "Factors to be considered ... in determining ... reasonableness ... include...: (1) The time and labor required, the novelty and difficulty of the questions involved *339 and the skill requisite to perform the legal service properly. (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. (3) The fee customarily charged in the locality for similar services. (4) The amount involved and the results obtained. (5) The time limitations imposed by the client or by the circumstances. (6) The nature and length of the professional relationship with the client. (7) The experience, reputation, and ability of the lawyer or lawyers performing the services. (8) Whether the fee is fixed or contingent." The Rule includes the factor of ability to pay; a person of ample means may justly be charged more for a service, and a person of limited means less, other factors being the same. EC 2-17 states that "A lawyer should not charge more than a reasonable fee...."
There is no counterpart to Rule 1.5(b) in the Disciplinary Rules of the Code. EC 2-19 states that "It is usually beneficial to reduce to writing the understanding of the parties regarding the fee, particularly when it is contingent."
With regard to Rule 1.5(c), DR 2-106(C) prohibits "a contingent fee in a criminal case."
With regard to Rule 1.5(d), DR 2-107(A) permits division of fees only if: "(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made. (2) The division is in proportion to the services performed and responsibility assumed by each. (3) The total fee does not exceed clearly reasonable compensation...." Rule 1.5(d) permits division without regard to the services rendered by each lawyer if they assume joint responsibility for the representation.
RULE 1.6 Confidentiality of Information
(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).
(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
(1) to prevent the client from committing a criminal act; or
(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.
(c) Neither this Rule nor Rule 1.8(b) nor Rule 1.16(d) prevents the lawyer from giving notice of the fact of withdrawal, and the lawyer may also withdraw of disaffirm any opinion, document, affirmation or the like. Delete the second sentence of the second paragraph under "withdrawal" in the Comment which is the identical language of the new insertion in the Rule.
COMMENT:
The lawyer is part of a judicial system charged with upholding the law. One of the lawyer's functions is to advise clients so that they avoid any violation of the law in the proper exercise of their rights.
The observance of the ethical obligation of a lawyer to hold inviolate confidential information of the client not only facilitates the full development of facts essential to proper representation of the client but also encourages people to seek early legal assistance.
Almost without exception, clients come to lawyers in order to determine what their rights are and what is, in the maze of laws and regulations, deemed to be legal and correct. The common law recognizes that the client's confidences must be protected from disclosure. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.
*340 A fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation. The client is thereby encouraged to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter.
The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law. See also Scope.
The requirement of maintaining confidentiality of information relating to representation applies to government lawyers who may disagree with the policy goals that their representation is designed to advance.
Authorized Disclosure
A lawyer is impliedly authorized to make disclosures about a client when appropriate in carrying out the representation, except to the extent that the client's instructions or special circumstances limit that authority. In litigation, for example, a lawyer may disclose information by admitting a fact that cannot properly be disputed, or in negotiation by making a disclosure that facilitates a satisfactory conclusion.
Lawyers in a firm may, in the course of the firm's practice, disclose to each other information relating to a client of the firm, unless the client has instructed that particular information be confined to specified lawyers.
Disclosure Adverse to Client
The confidentiality rule is subject to limited exceptions. In becoming privy to information about a client, a lawyer may foresee that the client intends serious harm to another person. However, to the extent a lawyer is required or permitted to disclose a client's purposes, the client will be inhibited from revealing facts which would enable the lawyer to counsel against a wrongful course of action. The public is better protected if full and open communication by the client is encouraged than if it is inhibited.
Several situations must be distinguished.
First, the lawyer may not counsel or assist a client in conduct that is criminal or fraudulent. See Rule 1.2(d). Similarly, a lawyer has a duty under Rule 3.3(a)(4) not to use false evidence. This duty is essentially a special instance of the duty prescribed in Rule 1.2(d) to avoid assisting a client in criminal or fraudulent conduct.
Second, the lawyer may have been innocently involved in past conduct by the client that was criminal or fraudulent. In such a situation the lawyer has not violated Rule 1.2(d), because to "counsel or assist" criminal or fraudulent conduct requires knowing that the conduct is of that character.
Third, the lawyer may learn that a client intends prospective conduct that is criminal and likely to result in immiment death or substantial bodily harm. As stated in paragraph (b)(1), the lawyer has professional discretion to reveal information in order to prevent such consequences. The lawyer may make a disclosure in order to prevent homicide or serious bodily injury which the lawyer reasonably believes is intended by a client. It is very difficult for a lawyer to "know" when such a heinous purpose will actually be carried out, for the client may have a change of mind.
The lawyer's exercise of discretion requires consideration of such factors as the nature of the lawyer's relationship with the client and with those who might be injured *341 by the client, the lawyer's own involvement in the transaction and factors that may extenuate the conduct in question. Where practical, the lawyer should seek to persuade the client to take suitable action. In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to the purpose. A lawyer's decision not to take preventive action permitted by paragraph (b)(1) does not violate this Rule.
Withdrawal
If the lawyer's services will be used by the client in materially furthering a course of criminal or fraudulent conduct, the lawyer must withdraw, as stated in Rule 1.16(a)(1).
After withdrawal the lawyer is required to refrain from making disclosure of the clients' confidences, except as otherwise provided in Rule 1.6. Neither this Rule nor Rule 1.8(b) nor Rule 1.16(d) prevents the lawyer from giving notice of the fact of withdrawal, and the lawyer may also withdraw or disaffirm any opinion, document, affirmation, or the like.
Where the client is an organization, the lawyer may be in doubt whether contemplated conduct will actually be carried out by the organization. Where necessary to guide conduct in connection with this Rule, the lawyer may make inquiry within the organization as indicated in Rule 1.13(b).
Dispute Concerning Lawyer's Conduct
Where a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client. The lawyer's right to respond arises when an assertion of such complicity has been made. Paragraph (b)(2) does not require the lawyer to await the commencement of an action or proceeding that charges such complicity, so that the defense may be established by responding directly to a third party who has made such an assertion. The right to defend, of course, applies where a proceeding has been commenced. Where practicable and not prejudicial to the lawyer's ability to establish the defense, the lawyer should advise the client of the third party's assertion and request that the client respond appropriately. In any event, disclosure should be no greater than the lawyer reasonably believes is necessary to vindicate innocence, the disclosure should be made in a manner which limits access to the information to the tribunal or other persons having a need to know it, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.
If the lawyer is charged with wrongdoing in which the client's conduct is implicated, the rule of confidentiality should not prevent the lawyer from defending against the charge. Such a charge can arise in a civil, criminal or professional disciplinary proceeding, and can be based on a wrong allegedly committed by the lawyer against the client, or on a wrong alleged by a third person: for example, a person claiming to have been defrauded by the lawyer and client acting together. A lawyer entitled to a fee is permitted by paragraph (b)(2) to prove the services rendered in an action to collect it. This aspect of the rule expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary. As stated above, the lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure.
Disclosures Otherwise Required or Authorized
The attorney-client privilege is differently defined in various jurisdictions. If a lawyer is called as a witness to give testimony concerning a client, absent waiver by the client, Rule 1.6(a) requires the lawyer to invoke the privilege when it is applicable. The lawyer must comply with the *342 final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client.
The Rules of Professional Conduct in various circumstances permit or require a lawyer to disclose information relating to the representation. See Rules 2.2, 2.3, 3.3 and 4.1. In addition to these provisions, a lawyer may be obligated or permitted by other provisions of law to give information about a client. Whether another provision of law supersedes Rule 1.6 is a matter of interpretation beyond the scope of these Rules, but a presumption should exist against such a supersession.
Former Client
The duty of confidentiality continues after the client-lawyer relationship has terminated.
CODE COMPARISON:
The principle of confidentiality is enlarged in several respects and narrowed in a few respects compared with the corresponding provisions of the Code.
The general principle is enlarged in the following respects: First, the confidentiality requirement applies to all information about a client "relating to the representation." Under the Code, DR 4-101, the requirement applies only to information governed by the attorney-client privilege and to information "gained in" the professional relationship that "the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." Rule 1.6 thus imposes confidentiality on information relating to the representation even if it is acquired before or after the relationship existed. It does not require the client to indicate information that is to be confidential, or permit the lawyer to speculate whether particular information might be embarrassing or detrimental. Furthermore, this definition avoids the constricted definition of "confidence" that appears in some decisions.
See Allegaert v. Perot, 434 F.Supp. 790 (S.D.N.Y. 1977); Moritz v. Medical Protective Co., 428 F.Supp. 865 (W.D.Wis.1977); City of Wichita v. Chapman, 521 P.2d 589 (Kan.1974).
Rule 1.6(a) permits a lawyer to disclose information where impliedly authorized in order to carry out the representation. Under DR 4-101(B) and (C), a lawyer cannot disclose "confidences" unless the client first expressly consents after disclosure.
Second, paragraph (b) redefines the exceptions to the requirement of confidentiality. Under the Code, DR 4-101(C)(3), a lawyer "may reveal the intention of his client to commit a crime and the information necessary to prevent the crime." This option exists regardless of the seriousness of the proposed crime. Also, under DR 7-102(B), the lawyer is required to reveal information necessary to "rectify" a "fraud upon a person or tribunal." DR 7-102(B) applies to past frauds and presumably to future frauds if the client goes on to commit them. DR 7-102(B), as amended by the ABA in 1974 and as adopted in some states, is subject to an amendment that disclosure is not permitted "when the information is protected as a privileged communication." Technically, this exception would only apply if the lawyer is under compulsion of law to testify, for only then would the information be "privileged." However, ABA Formal Opinion 341 (1975) construed the term "privilege" to include "confidences" as defined in DR 4-101(A).
Under Rule 1.6(b)(1), the lawyer may reveal information about a client to prevent the client from committing a crime that is likely to result in the specified serious consequences.
With regard to Rule 1.6(b)(3), DR 4-101(C)(4) provides that a lawyer may reveal "confidences or secrets necessary to establish or collect his fee or to defend himself or his employers or associates against an accusation of wrongful conduct." Rule 1.6(b)(3) enlarges the exception to include disclosure of information relating to claims by the lawyer other than for his fee: for example, recovery of property from the client. It narrows the exception dealing with defense against claims of wrongful *343 conduct to situations where the client's conduct was involved.
RULE 1.7 Conflict of Interest: General Rule
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.
COMMENT:
Loyalty to a Client
Loyalty is an essential element in the lawyer's relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. See Rule 1.16. Where more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by Rule 1.9. See also Rule 2.2(c). As to whether a client-lawyer relationship exists or, having once been established, is continuing, see Comment to Rule 1.3 and Scope.
As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent. Paragraph (a) expresses that general rule. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients. Paragraph (a) applies only when the representation of one client would be directly adverse to the other.
Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.
Consultation and Consent
A client may consent to representation notwithstanding a conflict. However, as indicated in paragraph (a)(1) with respect to representation directly adverse to a client, and paragraph (b)(1) with respect to material limitations on representation of a client, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. When more than one client is involved, the question of conflict must be resolved as to each *344 client. Moreover, there may be circumstances where it is impossible to make the disclosure necessary to obtain consent. For example, when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.
Lawyer's Interests
The lawyer's own interests should not be permitted to have adverse effect on representation of a client. For example, a lawyer's need for income should not lead the lawyer to undertake matters that cannot be handled competently and at a reasonable fee. See Rules 1.1 and 1.5. If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice. A lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed interest.
Conflicts in Litigation
Paragraph (a) prohibits representation of opposing parties in litigation. Simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by paragraph (b). An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant. On the other hand, common representation of persons having similar interests is proper if the risk of adverse effect is minimal and the requirements of paragraph (b) are met. Compare Rule 2.2 involving intermediation between clients.
Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a client. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship with the enterprise or conduct of the suit and if both clients consent upon consultation. By the same token, government lawyers in some circumstances may represent government employees in proceedings in which a government agency is the opposing party. The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for a declaratory judgment concerning statutory interpretation.
A lawyer may represent parties having antagonistic positions on a legal question that has arisen in different cases, unless representation of either client would be adversely affected. Thus, it is ordinarily not improper to assert such positions in cases pending in different trial courts, but it may be improper to do so in cases pending at the same time in an appellate court.
Interest of Person Paying for a Lawyer's Service
A lawyer may be paid from a source other than the client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty to the client. See Rule 1.8(f). For example, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement, and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence. So also, when a corporation and its directors or employees are involved in a controversy in which they have conflicting interests, the corporation may provide funds for separate *345 legal representation of the directors or employees, if the clients consent after consultation and the arrangement ensures the lawyer's professional independence.
Other Conflict Situations
Conflicts of interest in contexts other than litigation sometimes may be difficult to assess. Relevant factors in determining whether there is potential for adverse effect include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise and the likely prejudice to the client from the conflict if it does arise. The question is often one of proximity and degree.
For example, a lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic to each other, but common representation is permissible where the clients are generally aligned in interest even though there is some difference of interest among them.
Conflict questions may also arise in estate planning and estate administration. A lawyer may be called upon to prepare wills for several family members, such as husband and wife, and, depending upon the circumstances, a conflict of interest may arise. In estate administration the identity of the client may be unclear under the law of a particular jurisdiction. Under one view, the client is the fiduciary; under another view the client is the estate or trust, including its beneficiaries. The lawyer should make clear the relationship to the parties involved.
A lawyer for a corporation or other organization who is also a member of its board of directors should determine whether the responsibilities of the two roles may conflict. The lawyer may be called on to advise the corporation in matters involving actions of the directors. Consideration should be given to the frequency with which such situations may arise, the potential intensity of the conflict, the effect of the lawyer's resignation from the board and the possibility of the corporation's obtaining legal advice from another lawyer in such situations. If there is material risk that the dual role will compromise the lawyer's independence of professional judgment, the lawyer should not serve as a director.
Conflict Charged by an Opposing Party
Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment. See Scope.
CODE COMPARISON:
DR 5-101(A) provides that "Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of the client will be or reasonably may be affected by his own financial, business, property, or personal interests." DR 5-105(A) provides that "A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(Q." DR 5-105(C) provides that "In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." DR 5-107(B) provides that "A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct *346 or regulate his professional judgment in rendering such services."
Rule 1.7 goes beyond DR 5-105(A) in requiring that, when the lawyer's other interests are involved, not only must the client consent after consultation but also that, independent of such consent, the representation reasonably appears not to be adversely affected by the lawyer's other interests. This requirement appears to be the intended meaning of the provision in DR 5-105(C) that "it is obvious that he can adequately represent" the client, and is implicit in EC 5-2, which states that "A lawyer should not accept proffered employment if his personal interests or desires will, or there is a reasonable possibility that they will, adversely affect the advice to be given or services to be rendered the prospective client."
RULE 1.8 Conflict of Interest: Prohibited Transactions
(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client:
(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) the client consents in writing thereto.
(b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation.
(c) A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.
(d) Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.
(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
(1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.
(f) A lawyer shall not accept compensation for representing a client from one other than the client unless:
(1) the client consents after consultation;
(2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
(3) information relating to representation of a client is protected as required by Rule 1.6.
(g) A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.
(h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former *347 client without first advising that person in writing that independent representation is appropriate in connection therewith.
(i) A lawyer related to another lawyer as parent, child, sibling or spouse shall not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the other lawyer except upon consent by the client after consultation regarding the relationship.
(j) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
(1) acquire a lien granted by law to secure the lawyer's fee or expenses; and
(2) contract with a client for a reasonable contingent fee in a civil case.
COMMENT:
Transactions Between Client and Lawyer
As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. In such transactions a review by independent counsel on behalf of the client is often advisable. Furthermore, a lawyer may not exploit information relating to the representation to the client's disadvantage. For example, a lawyer who has learned that the client is investing in specific real estate may not, without the client's consent, seek to acquire nearby property where doing so would adversely affect the client's plan for investment. Paragraph (a) does not, however, apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services. In such transactions, the lawyer has no advantage in dealing with the client, and the restrictions in paragraph (a) are unnecessary and impracticable.
A lawyer may accept a gift from a client, if the transaction meets general standards of fairness. For example, a simple gift such as a present given at a holiday or as a token of appreciation is permitted. If effectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance, however, the client should have the detached advice that another lawyer can provide. Paragraph (c) recognizes an exception where the client is a relative of the donee or the gift is not substantial.
Literary Rights
An agreement by which a lawyer acquires literary or media rights concerning the conduct of the representation creates a conflict between the interests of the client and the personal interests of the lawyer. Measures suitable in the representation of the client may detract from the publication value of an account of the representation. Paragraph (d) does not prohibit a lawyer representing a client in a transaction concerning literary property from agreeing that the lawyer's fee shall consist of a share in ownership in the property, if the arrangement conforms to Rule 1.5 and paragraph (j).
Person Paying for Lawyer's Services
Rule 1.8(f) requires disclosure of the fact that the lawyer's services are being paid for by a third party. Such an arrangement must also conform to the requirements of Rule 1.6 concerning confidentiality and Rule 1.7 concerning conflict of interest. Where the client is a class, consent may be obtained on behalf of the class by court-supervised procedure.
Family Relationships Between Lawyers
Rule 1.8(i) applies to related lawyers who are in different firms. Related lawyers in the same firm are governed by Rules 1.7, 1.9, and 1.10. The disqualification stated in Rule 1.8(i) is personal and is not imputed to members of firms with whom the lawyers are associated.
Acquisition of Interest in Litigation
Paragraph (j) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. *348 This general rule, which has its basis in common law champerty and maintenance, is subject to specific exceptions developed in decisional law and continued in these Rules, such as the exception for reasonable contingent fees set forth in Rule 1.5 and the exception for certain advances of the costs of litigation set forth in paragraph (e).
This Rule is not intended to apply to customary qualification and limitations in legal opinions and memoranda.
CODE COMPARISON:
This Rule deals with certain transactions that per se involve conflict of interest.
With regard to Rule 1.8(a), DR 5-104(A) provides that "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure." EC 5-3 states that "A lawyer should not seek to persuade his client to permit him to invest in an undertaking of his client nor make improper use of his professional relationship to influence his client to invest in an enterprise in which the lawyer is interested."
With regard to Rule 1.8(b), DR 4-101(B)(3) provides that a lawyer shall not "use a confidence or secret of his client for the advantage of himself, or of a third person, unless the client consents after full disclosure."
There is no counterpart to Rule 1.8(c) in the Disciplinary Rules of the Code. EC 5-5 states that "A lawyer should not suggest to his client that a gift be made to himself or for his benefit. If a lawyer accepts a gift from his client, he is peculiarly susceptible to the charge that he unduly influenced or overreached the client. If a client voluntarily offers to make a gift to his lawyer, the lawyer may accept the gift, but before doing so, he should urge that the client secure disinterested advice from an independent, competent person who is cognizant of all the circumstances. Other than in exceptional circumstances, a lawyer should insist that an instrument in which his client desires to name him beneficially be prepared by another lawyer selected by the client."
Rule 1.8(d) is substantially similar to DR 5-104(B), but refers to "literary or media" rights, a more generally inclusive term than "publication" rights.
Rule 1.8(e)(1) is similar to DR 5-103(B), but eliminates the requirement that "the client remain ultimately liable for such expenses."
Rule 1.8(e)(2) has no counterpart in the Code.
Rule 1.8(f) is substantially identical to DR 5-107(A)(1).
Rule 1.8(g) is substantially identical to DR 5-106.
The first clause of Rule 1.8(h) deals with the same subject as DR 6-102(A). There is no counterpart in the Code to the second clause of Rule 1.8(h).
Rule 1.8(i) has no counterpart in the Code.
RULE 1.9 Conflict of Interest: Former Client
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.
COMMENT:
After termination of a client-lawyer relationship, a lawyer may not represent another client except in conformity with this Rule. The principles in Rule 1.7 determine whether the interests of the present and former client are adverse. Thus, a lawyer could not properly seek to rescind on behalf *349 of a new client a contract drafted on behalf of the former client. So also a lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction.
The scope of a "matter" for purposes of Rule 1.9(a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdiction. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.
Information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client.
Disqualification from subsequent representation is for the protection of clients and can be waived by them. A waiver is effective only if there is disclosure of the circumstances, including the lawyer's intended role in behalf of the new client.
With regard to an opposing party's raising a question of conflict of interest, see Comment to Rule 1.7. With regard to disqualification of a firm with which a lawyer is associated, see Rule 1.10.
CODE COMPARISON:
There is no counterpart to Rule 1.9(a) or (b) in the Disciplinary Rules of the Code. The problem addressed in Rule 1.9(a) sometimes has been dealt with under the rubric of Canon 9 of the Code, which provides that "A lawyer should avoid even the appearance of impropriety." EC 4-6 states that "the obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment."
The exception in the last sentence of Rule 1.9(b) permits a lawyer to use information relating to a former client that is in the "public domain," a use that is also not prohibited by the Code. Since the scope of Rule 1.6(a) is much broader than "confidences and secrets," it is necessary to define when a lawyer may make use of information about a client after the client-lawyer relationship has terminated.
The provision for waiver by the former client is in effect similar to DR 5-105(C).
RULE 1.10 Imputed Disqualification: General Rule
(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.
(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.
(c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:
(1) the matter is the same or substantially related to that in which the formerly *350 associated lawyer represented the client; and
(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter.
(d) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.
COMMENT:
Definition of "Firm"
For purposes of the Rules of Professional Conduct, the term "firm" includes lawyers in a private firm, and lawyers employed in the legal department of a corporation or other organization, or in a legal services organization. Whether two or more lawyers constitute a firm within this definition can depend on the specific facts. For example, two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the Rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to confidential information concerning the clients they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the rule that is involved. A group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that information acquired by one lawyer is attributed to another.
With respect to the law department of an organization, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct. However, there can be uncertainty as to the identity of the client. For example, it may not be clear whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed. A similar question can arise concerning an unincorporated association and its local affiliates.
Similar questions can also arise with respect to lawyers in legal aid. Lawyers employed in the same unit of a legal service organization constitute a firm, but not necessarily those employed in separate units. As in the case of independent practitioners, whether the lawyers should be treated as associated with each other can depend on the particular rule that is involved, and on the specific facts of the situation.
Where a lawyer has joined a private firm after having represented the government, the situation is governed by Rule 1.11(a) and (b); where a lawyer represents the government after having served private clients, the situation is governed by Rule 1.11(c)(1). The individual lawyer involved is bound by the Rules generally, including Rules 1.6, 1.7, and 1.9.
Different provisions are thus made for movement of a lawyer from one private firm to another and for movement of a lawyer between a private firm and the government. The government is entitled to protection of its client confidences, and therefore to the protections provided in Rules 1.6, 1.9, and 1.11. However, if the more extensive disqualification in Rule 1.10 were applied to former government lawyers, the potential effect on the government would be unduly burdensome. The government deals with all private citizens and organizations, and thus has a much wider circle of adverse legal interests than does any private law firm. In these circumstances, the government's recruitment of lawyers would be seriously impaired if Rule 1.10 were applied to the government. On balance, therefore, the government is better served in the long run by the protections stated in Rule 1.11.
Principles of Imputed Disqualification
The rule of imputed disqualification stated in paragraph (a) gives effect to the *351 principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyualty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated. Paragraph (a) operates only among the lawyers currently associated in a firm. When a lawyer moves from one firm to another, the situation is governed by paragraphs (b) and (c).
Lawyers Moving Between Firms
When lawyers have been associated in a firm but then end their association, however, the problem is more complicated. The fiction that the law firm is the same as a single lawyer is no longer wholly realistic. There are several competing considerations. First, the client previously represented must be reasonably assured that the principle of loyalty to the client is not compromised. Second, the rule of disqualification should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule of disqualification should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers. If the concept of imputed disqualification were defined with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.
Reconciliation of these competing principles in the past has been attempted under two rubrics. One approach has been to seek per se rules of disqualification. For example, it has been held that a partner in a law firm is conclusively presumed to have access to all confidences concerning all clients of the firm. Under this analysis, if a lawyer has been a partner in one law firm and then becomes a partner in another law firm, there is a presumption that all confidences known by a partner in the first firm are known to all partners in the second firm. This presumption might properly be applied in some circumstances, especially where the client has been extensively represented, but may be unrealistic where the client was represented only for limited purposes. Furthermore, such a rigid rule exaggerates the difference between a partner and an associate in modern law firms.
The other rubric formerly used for dealing with vicarious disqualification is the appearance of impropriety proscribed in Canon 9 of the ABA Model Code of Professional Responsibility. This rubric has a two-fold problem. First, the appearance of impropriety can be taken to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since "impropriety" is undefined, the term "appearance of impropriety" is question-begging. It therefore has to be recognized that the problem of imputed disqualification cannot be properly resolved either by simple analogy to a lawyer practicing alone or by the very general concept of appearance of impropriety.
A rule based on a functional analysis is more appropriate for determining the question of vicarious disqualification. Two functions are involved: preserving confidentiality and avoiding positions adverse to a client.
Confidentiality
Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; *352 it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients.
Application of paragraphs (b) and (c) depends on a situation's particular facts. In any such inquiry, the burden of proof should rest upon the firm whose disqualification is sought.
Paragraph (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(b). Thus, if a lawyer while with one firm acquired no knowledge of information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict.
Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented. See Rules 1.6 and 1.9.
Adverse Positions
The second aspect of loyalty to client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires abstention from adverse representation by the individual lawyer involved, but does not properly entail abstention of other lawyers through imputed disqualification. Hence, this aspect of the problem is governed by Rule 1.9(a). Thus, if a lawyer left one firm for another, the new affiliation would not preclude the firms involved from continuing to represent clients with adverse interests in the same or related matters, so long as the conditions of Rule 1.10(b) and (c) concerning confidentiality have been met.
CODE COMPARISON:
DR 5-105(D) provides that "If a lawyer is required to decline or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or affiliate with him or his firm, may accept or continue such employment."
RULE 1.11 Successive Government and Private Employment
(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.
(b) Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.
(c) Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:

*353 (1) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter; or
(2) negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially.
(d) As used in this Rule, the term "matter" includes:
(1) any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties; and
(2) any other matter covered by the conflict of interest rules of the appropriate government agency.
(e) As used in this Rule, the term "confidential government information" means information which has been obtained under governmental authority and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public.
COMMENT:
This Rule prevents a lawyer from exploiting public office for the advantage of a private client. It is a counterpart of Rule 1.10(b), which applies to lawyers moving from one firm to another.
A lawyer representing a government agency, whether employed or specially retained by the government, is subject to the Rules of Professional Conduct, including the prohibition against representing adverse interests stated in Rule 1.7 and the protections afforded former clients in Rule 1.9. In addition, such a lawyer is subject to Rule 1.11 and to statutes and government regulations regarding conflict of interest. Such statutes and regulations may circumscribe the extent to which the government agency may give consent under this Rule.
Where the successive clients are a public agency and a private client, the risk exists that power or discretion vested in public authority might be used for the special benefit of a private client. A lawyer should not be in a position where benefit to a private client might affect performance of the lawyer's professional functions on behalf of public authority. Also, unfair advantage could accrue to the private client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service. However, the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards. The provisions for screening and waiver are necessary to prevent the disqualification rule from imposing too severe a deterrent against entering public service.
When the client is an agency of one government, that agency should be treated as a private client for purposes of this Rule if the lawyer thereafter represents an agency of another government, as when a lawyer represents a city and subsequently is employed by a federal agency.
Paragraphs (a)(1) and (b) do not prohibit a lawyer from receiving a salary or partnership share established by prior independent agreement. They prohibit directly relating the attorney's compensation to the fee in the matter in which the lawyer is disqualified.
Paragraph (a)(2) does not require that a lawyer give notice to the government agency at a time when premature disclosure would injure the client; a requirement for premature disclosure might preclude engagement of the lawyer. Such notice is, however, required to be given as soon as practicable in order that the government *354 agency will have a reasonable opportunity to ascertain that the lawyer is complying with Rule 1.11 and to take appropriate action if it believes the lawyer is not complying.
Paragraph (b) operates only when the lawyer in question has knowledge of the information, which means actual knowledge: it does not operate with respect to information that merely could be imputed to the lawyer.
Paragraphs (a) and (c) do not prohibit a lawyer from jointly representing a private party and a government agency when doing so is permitted by Rule 1.7 and is not otherwise prohibited by law.
Paragraph (c) does not disqualify other lawyers in the agency with which the lawyer in question has become associated.
CODE COMPARISON:
Rule 1.11(a) is similar to DR 9-101(B), except that the latter uses the terms "in which he had substantial responsibility while he was a public employee."
Rules 1.11(b), (c), (d) and (e) have no counterparts in the Code.
RULE 1.12 Former Judge or Arbitrator
(a) Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such a person, unless all parties to the proceeding consent after disclosure.
(b) A lawyer shall not negotiate for employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially as a judge or other adjudicative officer, or arbitrator. A lawyer serving as a law clerk to a judge, other adjudicative officer or arbitrator may negotiate for employment with a party or attorney involved in a matter in which the clerk is participating personally and substantially, but only after the lawyer has notified the judge, other adjudicative officer or arbitrator.
(c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:
(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
(2) written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.
(d) An arbitrator selected as a partisan of a party in a multi-member arbitration panel is not prohibited from subsequently representing that party.
COMMENT:
This Rule generally parallels Rule 1.11. The term "personally and substantially" signifies that a judge who was a member of a multi-member court, and thereafter left judicial office to practice law, is not prohibited from representing a client in a matter pending in the court, but in which the former judge did not participate. So also the fact that a former judge exercised administrative responsibility in a court does not prevent the former judge from acting as a lawyer in a matter where the judge had previously exercised remote or incidental administrative responsibility that did not affect the merits. Compare the Comment to Rule 1.11. The term "adjudicative officer" includes such officials as judges pro tempore, referees, special masters, hearing officers and other parajudicial officers, and also lawyers who serve as part-time judges. Compliance Canons A(2), B(2) and C of the Model Code of Judicial Conduct provide that a part-time judge, judge pro tempore or retired judge recalled to active service, may not "act as a lawyer in any proceeding in which he served as a judge or in any other proceeding related thereto." Although phrased differently from this Rule, those Rules correspond in meaning.
CODE COMPARISON:
Paragraph (a) is substantially similar to DR 9-101(A), which provides that "A lawyer *355 shall not accept employment in a matter upon the merits of which he has acted in a judicial capacity." Paragraph (a) differs, however, in that it is broader in scope and states more specifically the persons to whom it applies. There is no counterpart in the Code to paragraphs (b), (c) or (d).
With regard to arbitrators, EC 5-20 states that "a lawyer who has undertaken to act as an impartial arbitrator or mediator should not thereafter represent in the dispute any of the parties involved." DR 9-101(A) does not provide a waiver of the disqualification applied to former judges by consent of the parties. However, DR 5-105(C) is similar in effect and could be construed to permit waiver.
RULE 1.13 Organization as Client
(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.
(b) If a lawyer for an organization knows that an officer, employee or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law which reasonably might be imputed to the organization, and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization. In determining how to proceed, the lawyer shall give due consideration to the seriousness of the violation and its consequences, the scope and nature of the lawyer's representation, the responsibility in the organization and the apparent motivation of the person involved, the policies of the organization concerning such matters and any other relevant considerations. Any measures taken shall be designed to minimize disruption of the organization and the risk of revealing information relating to the representation to persons outside the organization. Such measures may include among others:
(1) asking reconsideration of the matter;
(2) advising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization; and
(3) referring the matter to higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest authority that can act in behalf of the organization as determined by applicable law.
(c) If, despite the lawyer's efforts in accordance with paragraph (b), the highest authority that can act on behalf of the organization insists upon action, or a refusal to act, that is clearly a violation of law and is likely to result in substantial injury to the organization, the lawyer may resign in accordance with Rule 1.16.
(d) In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when it is apparent that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.
(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.
COMMENT:
The Entity as the Client
An organizational client is a legal entity, but it cannot act except through its officers, directors, employees, shareholders and other constituents.
Officers, directors, employees and shareholders are the constituents of the corporate organizational client. The duties defined in this Comment apply equally to unincorporated associations, "Other constituents" *356 as used in this Comment means the positions equivalent to officers, directors, employees and shareholders held by persons acting for organizational clients that are not corporations.
When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by Rule 1.6. Thus, by way of example, if an organizational client requests its lawyer to investigate allegations of wrongdoing, interviews made in the course of that investigation between the lawyer and the client's employees or other constituents are covered by Rule 1.6. This does not mean, however, that constituents of an organizational client are the clients of the lawyer. The lawyer may not disclose to such constituents information relating to the representation except for disclosures explicitly or impliedly authorized by the organizational client in order to carry out the representation or as otherwise permitted by Rule 1.6.
When constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful. Decisions concerning policy and operations, including ones entailing serious risk, are not as such in the lawyer's province. However, different considerations arise when the lawyer knows that the organization may be substantially injured by action of constituent that is in violation of law. In such a circumstance, it may be reasonably necessary for the lawyer to ask the constituent to reconsider the matter. If that fails, or if the matter is of sufficient seriousness and importance to the organization, it may be reasonably necessary for the lawyer to take steps to have the matter reviewed by a higher authority in the organization. Clear justification should exist for seeking review over the head of the constituent normally responsible for it. The stated policy of the organization may define circumstances and prescribe channels for such review, and a lawyer should encourage the formulation of such a policy. Even in the absence of organization policy, however, the lawyer may have an obligation to refer a matter to higher authority, depending on the seriousness of the matter and whether the constituent in question has apparent motives to act at variance with the organization's interest. Review by the chief executive officer or by the board of directors may be required when the matter is of importance commensurate with their authority. At some point it may be useful or essential to obtain an independent legal opinion.
In an extreme case, it may be reasonably necessary for the lawyer to refer the matter to the organization's highest authority. Ordinarily, that is the board of directors or similar governing body. However, applicable law may prescribe that under certain conditions highest authority reposes elsewhere; for example, in the independent directors of a corporation.
Relation to Other Rules
The authority and responsibility provided in paragraph (b) are concurrent with the authority and responsibility provided in other Rules. In particular, this Rule does not limit or expand the lawyer's responsibility under Rules 1.6, 1.8, and 1.16, 3.3 or 4.1. If the lawyer's services are being used by an organization to further a crime or fraud by the organization, Rule 1.2(d) can be applicable.
Government Agency
The duty defined in this Rule applies to governmental organizations. However, when the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful official act is prevented or rectified, for public business is involved. In addition, duties of lawyers employed by the government or lawyers in military service may be defined by statutes and regulation. Therefore, defining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context. Although in some circumstances the client may be a specific agency, it is generally the government as a *357 whole. For example, if the action or failure to act involves the head of a bureau, either the department of which the bureau is a part or the government as a whole may be the client for purpose of this Rule. Moreover, in a matter involving the conduct of government officials, a government lawyer may have authority to question such conduct more extensively than that of a lawyer for a private organization in similar circumstances. This Rule does not limit that authority. See note on Scope.
Clarifying the Lawyer's Role
There are times when the organization's interest may be or become adverse to those of one or more of its constituents. In such circumstances the lawyer should advise any constituent, whose interest the lawyer finds adverse to that of the organization of the conflict or potential conflict of interest, that the lawyer cannot represent such constituent, and that such person may wish to obtain independent representation. Care must be taken to assure that the individual understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for that constituent individual, and that discussions between the lawyer for the organization and the individual may not be privileged.
Whether such a warning should be given by the lawyer for the organization to any constituent individual may turn on the facts of each case.
Dual Representation
Paragraph (e) recognizes that a lawyer for an organization may also represent a principal officer or major shareholder.
Derivative Actions
Under generally prevailing law, the shareholders or members of a corporation may bring suit to compel the directors to perform their legal obligations in the supervision of the organization. Members of unincorporated associations have essentially the same right. Such an action may be brought nominally by the organization, but usually is, in fact, a legal controversy over management of the organization.
The question can arise whether counsel for the organization may defend such an action. The proposition that the organization is the lawyer's client does not alone resolve the issue. Most derivative actions are a normal incident of an organization's affairs, to be defended by the organization's lawyer like any other suit. However, if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board. In those circumstances, Rule 1.7 governs who should represent the directors and the organization.
CODE COMPARISON:
There is no counterpart to this Rule in the Disciplinary Rules of the Code. EC 5-18 states that "A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization. Occasionally, a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such a case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present." EC 5-24 states "although a lawyer may be employed by a business corporation with non-lawyers serving as directors or officers, and they necessarily have the right to make decisions of business policy, a lawyer must decline to accept direction of his professional judgment from any layman." DR 5-107(B) provides that "a lawyer shall not permit a person who... employs ... him to render legal services for another to direct or regulate his professional judgment in rendering such legal services."
*358 RULE 1.14 Client Under a Disability
(a) When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.
(b) A lawyer may seek the appointment of a guardian or take other protective action with respect to a client, only when the lawyer reasonably believes that the client cannot adequately act in the client's own interest.
COMMENT:
The normal client-lawyer relationship is based on the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters. When the client is a minor or suffers from a mental disorder or disability, however, maintaining the ordinary client-lawyer relationship may not be possible in all respects. In particular, an incapacitated person may have no power to make legally binding decisions. Nevertheless, a client lacking legal competence often has the ability to understand, deliberate upon, and reach conclusions about matters affecting the client's own well-being. Furthermore, to an increasing extent the law recognizes intermediate degrees of competence. For example, children as young as five or six years of age, and certainly those of ten or twelve, are regarded as having opinions that are entitled to weight in legal proceedings concerning their custody. So also, it is recognized that some persons of advanced age can be quite capable of handling routine financial matters while needing special legal protection concerning major transactions.
The fact that a client suffers a disability does not diminish the lawyer's obligation to treat the client with attention and respect. If the person has no guardian or legal representative, the lawyer often must act as de facto guardian. Even if the person does have a legal representative, the lawyer should as far as possible accord the represented person the status of client, particularly in maintaining communication.
If a legal representative has already been appointed for the client, the lawyer should ordinarily look to the representative for decisions on behalf of the client. If a legal representative has not been appointed, the lawyer should see to such an appointment where it would serve the client's best interests. Thus, if a disabled client has substantial property that should be sold for the client's benefit, effective completion of the transaction ordinarily requires appointment of a legal representative. In many circumstances, however, appointment of a legal representative may be expensive or traumatic for the client. Evaluation of these considerations is a matter of professional judgment on the lawyer's part.
If the lawyer represents the guardian as distinct from the ward, and is aware that the guardian is acting adversely to the ward's interest, the lawyer may have an obligation to prevent or rectify the guardian's misconduct, See Rule 1.2(d).
Disclosure of the Client's Condition
Rules of procedure in litigation generally provide that minors or persons suffering mental disability shall be represented by a guardian or next friend if they do not have a general guardian. However, disclosure of the client's disability can adversely affect the client's interests. For example, raising the question of disability could, in some circumstances, lead to proceedings for involuntary commitment. The lawyer's position in such cases is an unavoidably difficult one. The lawyer may seek guidance from an appropriate diagnostician.
CODE COMPARISON:
There is no counterpart to this Rule in the Disciplinary Rules of the Code. EC 7-12 states that "Any mental or physical condition of a client that renders him incapable of making a considered judgment on his own behalf casts additional responsibilities upon his lawyer. Where an incompetent is acting through a guardian or other legal representative, a lawyer must look to *359 such representative for those decisions which are normally the prerogative of the client. If a client under disability has no legal representative, his lawyer may be compelled in court proceedings to make decisions on behalf of the client. If the client is capable of understanding the matter in question or of contributing to the advancement of his interests, regardless of whether he is legally disqualified from performing certain acts, the lawyer should obtain from him all possible aid. If the disability of a client and the lack of legal representative compel the lawyer to make decisions for his client, the lawyer should consider all circumstances then prevailing and act with care to safeguard and advance the interests of his client. But obviously a lawyer cannot perform any act or make any decision which the law requires his client to perform or make, either acting for himself if competent, or by a duly constituted representative if legally incompetent."
RULE 1.15 Safekeeping Property
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of [five years] after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
COMMENT:
A lawyer should hold property of others with the care required of a professional fiduciary. Securities should be kept in a safe deposit box, except when some other form of safekeeping is warranted by special circumstances. All property which is the property of clients or third persons should be kept separate from the lawyer's business and personal property and, if monies, in one or more trust accounts. Separate trust accounts may be warranted when administering estate monies or acting in similar fiduciary capacities.
Lawyers often receive funds from third parties from which the lawyer's fee will be paid. If there is risk that the client may divert the funds without paying the fee, the lawyer is not required to remit the portion from which the fee is to be paid. However, a lawyer may not hold funds to coerce a client into accepting the lawyer's contention. The disputed portion of the funds should be kept in trust and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds shall be promptly distributed.
Third parties, such as a client's creditors, may have just claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client, and accordingly may refuse to surrender the property to the client. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party.
*360 The obligations of a lawyer under this Rule are independent of those arising from activity other than rendering legal services. For example, a lawyer who serves as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction.
A "client's security fund" provides a means through the collective efforts of the bar to reimburse persons who have lost money or property as a result of dishonest conduct of a lawyer. Where such a fund has been established, a lawyer should participate.
CODE COMPARISON:
With regard to Rule 1.15(a). DR 9-102(A) provides that "funds of clients" are to be kept in a trust account in the state in which the lawyer's office is situated. DR 9-102(B)(2) provides that a lawyer shall "identify and label securities and properties of a client ... and place them in ... safekeeping...." DR 9-102(B)(3) requires that a lawyer "maintain complete records of all funds, securities and other properties of a client...." Rule 1.15(a) extends these requirements to property of a third person that is in the lawyer's possession in connection with the representation.
Rule 1.15(b) is substantially similar to DR 9-102(B)(1) and (4).
Rule 1.15(c) is substantially similar to DR 9-102(A)(2), except that the requirement regarding disputes applies to property concerning which an interest is claimed by a third person as well as by a client.
RULE 1.16 Declining or Terminating Representation
(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of the rules of professional conduct or other law;
(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
(3) the lawyer is discharged.
(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:
(1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;
(2) the client has used the lawyer's services to perpetrate a crime or fraud;
(3) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;
(4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
(6) other good cause for withdrawal exists.
(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.
COMMENT:
A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion.
*361 Mandatory Withdrawal
A lawyer ordinarily must decline or withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Rules of Professional Conduct or other law. The lawyer is not obliged to decline or withdraw simply because the client suggests such a course of conduct: a client may make such a suggestion in the hope that a lawyer will not be constrained by a professional obligation.
When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. See also Rule 6.2. Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. The court may wish an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.
Discharge
A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services. Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances.
Whether a client can discharge appointed counsel may depend on applicable law. A client seeking to do so should be given a full explanation of the consequences. These consequences may include a decision by the appointing authority that appointment of successor counsel is unjustified, thus requiring the client to represent himself.
If the client is mentally incompetent, the client may lack the legal capacity to discharge the lawyer, and in any event the discharge may be seriously adverse to the client's interests. The lawyer should make special effort to help the client consider the consequences and, in an extreme case, may initiate proceedings for a conservatorship or similar protection of the client. See Rule 1.14.
Optional Withdrawal
A lawyer may withdraw from representation in some circumstances. The lawyer has the option to withdraw if it can be accomplished without material adverse effect on the client's interests. Withdrawal is also justified if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent, for a lawyer is not required to be associated with such conduct even if the lawyer does not further it. Withdrawal is also permitted if the lawyer's services were misused in the past even if that would materially prejudice the client. The lawyer also may withdraw where the client insists on a repugnant or imprudent objective.
A lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs or an agreement limiting the objectives of the representation.
Assisting the Client Upon Withdrawal
Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client. The lawyer may retain papers as security for a fee only to the extent permitted by law.
Whether or not a lawyer for an organization may under certain unusual circumstances have a legal obligation to the organization after withdrawing or being discharged by the organization's highest authority is beyond the scope of these Rules.

COUNSELOR
RULE 2.1 Advisor
In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation.
*362 COMMENT:
Scope of Advice
A client is entitled to straightforward advice expressing the lawyer's honest assessment. Legal advice often involves unpleasant facts and alternatives that a client may be disinclined to confront. In presenting advice, a lawyer endeavors to sustain the client's morale and may put advice in as acceptable a form as honesty permits. However, a lawyer should not be deterred from giving candid advice by the prospect that the advice will be unpalatable to the client.
Advice couched in narrowly legal terms may be of little value to a client, especially where practical considerations, such as cost or effects on other people, are predominant. Purely technical legal advice, therefore, can sometimes be inadequate. It is proper for a lawyer to refer to relevant moral and ethical considerations in giving advice. Although a lawyer is not a moral advisor as such, moral and ethical considerations impinge upon most legal questions and may decisively influence how the law will be applied.
A client may expressly or impliedly ask the lawyer for purely technical advice. When such a request is made by a client experienced in legal matters, the lawyer may accept it at face value. When such a request is made by a client inexperienced in legal matters, however, the lawyer's responsibility as advisor may include indicating that more may be involved than strictly legal considerations.
Matters that go beyond strictly legal questions may also be in the domain of another profession. Family matters can involve problems within the professional competence of psychiatry, clinical psychology or social work; business matters can involve problems within the competence of the accounting profession or of financial specialists. Where consultation with a professional in another field is itself something a competent lawyer would recommend, the lawyer should make such a recommendation. At the same time, a lawyer's advice at its best often consists of recommending a course of action in the face of conflicting recommendations of experts.
Offering Advice
In general, a lawyer is not expected to give advice until asked by the client. However, when a lawyer knows that a client proposes a course of action that is likely to result in substantial adverse legal consequences to the client, duty to the client under Rule 1.4 may require that the lawyer act if the client's course of action is related to the representation. A lawyer ordinarily has no duty to initiate investigation of a client's affairs or to give advice that the client has indicated is unwanted, but a lawyer may initiate advice to a client when doing so appears to be in the client's interest.
CODE COMPARISON:
There is no direct counterpart to Rule 2.1 in the Disciplinary Rules of the Code. DR 5-107(B) provides that "A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services." EC 7-8 states that "Advice of a lawyer to his client need not be confined to purely legal considerations.... In assisting his client to reach a proper decision, it is often desirable for a lawyer to point out those factors which may lead to a decision that is morally just as well as legally permissible.... In the final analysis, however.... the decision whether to forego legally available objectives or methods because of nonlegal factors is ultimately for the client...."
RULE 2.2 Intermediary
(a) A lawyer may act as intermediary between clients if:
(1) the lawyer consults with each client concerning the implications of the common representation, including the advantages and risks involved, and the effect on the attorney-client privileges, and obtains each client's consent to the common representation;

*363 (2) the lawyer reasonably believes that the matter can be resolved on terms compatible with the clients' best interests, that each client will be able to make adequately informed decisions in the matter and that there is little risk of material prejudice to the interests of any of the clients if the contemplated resolution is unsuccessful; and
(3) the lawyer reasonably believes that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients.
(b) While acting as intermediary, the lawyer shall consult with each client concerning the decisions to be made and the considerations relevant in making them, so that each client can make adequately informed decisions.
(c) A lawyer shall withdraw as intermediary if any of the clients so requests, or if any of the conditions stated in paragraph (a) is no longer satisfied. Upon withdrawal, the lawyer shall not continue to represent any of the clients in the matter that was the subject of the intermediation.
COMMENT:
A lawyer acts as intermediary under this Rule when the lawyer represents two or more parties with potentially conflicting interests. A key factor in defining the relationship is whether the parties share responsibility for the lawyer's fee, but the common representation may be inferred from other circumstances. Because confusion can arise as to the lawyer's role where each party is not separately represented, it is important that the lawyer make clear the relationship.
The Rule does not apply to a lawyer acting as arbitrator or mediator between or among parties who are not clients of the lawyer, even where the lawyer has been appointed with the concurrence of the parties. In performing such a role the lawyer may be subject to applicable codes of ethics, such as the Code of Ethics for Arbitration in Commercial Disputes prepared by a joint Committee of the American Bar Association and the American Arbitration Association.
A lawyer acts as intermediary in seeking to establish or adjust a relationship between clients on an amicable and mutually advantageous basis; for example, in helping to organize a business in which two or more clients are entrepreneurs, working out the financial reorganization of an enterprise in which two or more clients have an interest, arranging a property distribution in settlement of an estate or mediating a dispute between clients. The lawyer seeks to resolve potentially conflicting interests by developing the parties' mutual interests. The alternative can be that each party may have to obtain separate representation, with the possibility in some situations of incurring additional cost, complication or even litigation. Given these and other relevant factors, all the clients may prefer that the lawyer act as intermediary.
In considering whether to act as intermediary between clients, a lawyer should be mindful that if the intermediation fails the result can be additional cost, embarrassment and recrimination. In some situations the risk of failure is so great that intermediation is plainly impossible. For example, a lawyer cannot undertake common representation of clients between whom contentious litigation is imminent or who contemplate contentious negotiations. More generally, if the relationship between the parties has already assumed definite antagonism, the possibility that the clients' interests can be adjusted by intermediation ordinarily is not very good.
The appropriateness of intermediation can depend on its form. Forms of intermediation range from informal arbitration, where each client's case is presented by the respective client and the lawyer decides the outcome, to mediation, to common representation where the clients' interests are substantially though not entirely compatible. One form may be appropriate in circumstances where another would not. Other relevant factors are whether the lawyer subsequently will represent both parties on a continuing basis and whether the *364 situation involves creating a relationship between the parties or terminating one.
Confidentiality and Privilege
A particularly important factor in determining the appropriateness of intermediation is the effect on client-lawyer confidentiality and the attorney-client privilege. In a common representation, the lawyer is still required both to keep each client adequately informed and to maintain confidentiality of information relating to the representation. See Rules 1.4 and 1.6. Complying with both requirements while acting as intermediary requires a delicate balance. If the balance cannot be maintained, the common representation is improper. With regard to the attorney-client privilege, the prevailing rule is that as between commonly represented clients the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.
Since the lawyer is required to be impartial between commonly represented clients, intermediation is improper when that impartiality cannot be maintained. For example, a lawyer who has represented one of the clients for a long period and in a variety of matters might have difficulty being impartial between that client and one to whom the lawyer has only recently been introduced.
Consultation
In acting as intermediary between clients, the lawyer is required to consult with the clients on the implications of doing so, and proceed only upon consent based on such a consultation. The consultation should make clear that the lawyer's role is not that of partisanship normally expected in other circumstances.
Paragraph (b) is an application of the principle expressed in Rule 1.4. Where the lawyer is intermediary, the clients ordinarily must assume greater responsibility for decisions than when each client is independently represented.
Withdrawal
Common representation does not diminish the rights of each client in the client-lawyer relationship. Each has the right to loyal and diligent representation, the right to discharge the lawyer as stated in Rule 1.16, and the protection of Rule 1.9 concerning obligations to a former client.
CODE COMPARISON:
There is no direct counterpart to Rule 2.2 in the Disciplinary Rules of the Code. EC 5-20 states that "A lawyer is often asked to serve as an impartial arbitrator or mediator in matters which involve present or former clients. He may serve in either capacity if he first discloses such present or former relationships." DR 5-105(B) provides that "A lawyer shall not continue multiple employment if the exercise of his independent judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would involve him in representation of differing interests, except to the extent permitted under DR 5-105(C)." DR 5-105(C) provides that "a lawyer may represent multiple clients if it is obvious that he can adequately represent the interests of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."
RULE 2.3 Evaluation for Use by Third Persons
(a) A lawyer may undertake an evaluation of a matter affecting a client for the use of someone other than the client if:
(1) the lawyer reasonably believes that making the evaluation is compatible with other aspects of the lawyer's relationship with the client; and
(2) the client consents after consultation.
(b) Except as disclosure is required in connection with a report of an evaluation, information relating to the evaluation is otherwise protected by Rule 1.6.
*365 COMMENT:
Definition
An evaluation may be performed at the client's direction but for the primary purpose of establishing information for the benefit of third parties; for example, an opinion concerning the title of property rendered at the behest of a vendor for the information of a prospective purchaser, or at the behest of a borrower for the information of a prospective lender. In some situations, the evaluation may be required by a government agency; for example, an opinion concerning the legality of the securities registered for sale under the securities laws. In other instances, the evaluation may be required by a third person, such as a purchaser of a business.
Lawyers for the government may be called upon to give a formal opinion on the legality of contemplated government agency action. In making such an evaluation, the government lawyer acts at the behest of the government as the client but for the purpose of establishing the limits of the agency's authorized activity. Such an opinion is to be distinguished from confidential legal advice given agency officials. The critical question is whether the opinion is to be made public.
A legal evaluation should be distinguished from an investigation of a person with whom the lawyer does not have a client-lawyer relationship. For example, a lawyer retained by a purchaser to analyze a vendor's title to property does not have a client-lawyer relationship with the vendor. So also, an investigation into a person's affairs by a government lawyer, or by special counsel employed by the government, is not an evaluation as that term is used in this Rule. The question is whether the lawyer is retained by the person whose affairs are being examined. When the lawyer is retained by that person, the general rules concerning loyalty to client and preservation of confidences apply, which is not the case if the lawyer is retained by someone else. For this reason, it is essential to identify the person by whom the lawyer is retained. This should be made clear not only to the person under examination, but also to others to whom the results are to be made available.
Duty to Third Person
When the evaluation is intended for the information or use of a third person, a legal duty to that person may or may not arise. That legal question is beyond the scope of this Rule. However, since such an evaluation involves a departure from the normal client-lawyer relationship, careful analysis of the situation is required. The lawyer must be satisfied as a matter of professional judgment that making the evaluation is compatible with other functions undertaken in behalf of the client. For example, if the lawyer is acting as advocate in defending the client against charges of fraud, it would normally be incompatible with that responsibility for the lawyer to perform an evaluation for others concerning the same or a related transaction. Assuming no such impediment is apparent, however, the lawyer should advise the client of the implications of the evaluation, particularly the lawyer's responsibilities to third persons and the duty to disseminate the findings. Access to and Disclosure of Information
The quality of an evaluation depends on the freedom and extent of the investigation upon which it is based. Ordinarily a lawyer should have whatever latitude of investigation seems necessary as a matter of professional judgment. Under some circumstances, however, the terms of the evaluation may be limited. For example, certain issues or sources may be categorically excluded, or the scope of search may be limited by time constraints or the noncooperation of persons having relevant information. Any such limitations which are material to the evaluation should be described in the report. If after a lawyer has commenced an evaluation, the client refuses to comply with the terms upon which it was understood the evaluation was to have been made, the lawyer's obligations are determined by law, having reference to the terms of the client's agreement and the surrounding circumstances.
*366 Financial Auditors' Requests for Information
When a question concerning the legal situation of a client arises at the instance of the client's financial auditor and the question is referred to the lawyer, the lawyer's response may be made in accordance with procedures recognized in the legal profession. Such a procedure is set forth in the American Bar Association Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information, adopted in 1975.
CODE COMPARISON:
There is no counterpart to Rule 2.3 in the Code.

ADVOCATE
RULE 3.1 Meritorious Claims and Contentions
A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.
COMMENT:
The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.
The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.
CODE COMPARISON:
DR 7-102(A)(1) provides that a lawyer may not "file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another." Rule 3.1 is to the same general effect as DR 7-102(A)(1), with three qualifications. First, the test of improper conduct is changed from "merely to harass or maliciously injure another" to the requirement that there be a basis for the litigation measure involved that is "not frivolous." This includes the concept stated in DR 7-102(A)(2) that a lawyer may advance a claim or defense unwarranted by existing law if "it can be supported by good faith argument for an extension, modification, or reversal of existing law." Second, the test in Rule 3.1 is an objective test, whereas DR 7-102(A)(1) applies only if the lawyer "knows or when it is obvious" that the litigation is frivolous. Third, Rule 3.1 has an exception that in a criminal case, or a case in which incarceration of the client may result (for example, certain juvenile proceedings), the lawyer may put the prosecution to its proof even if there is no nonfrivolous basis for defense.
RULE 3.2 Expediting Litigation
A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.
COMMENT:
Dilatory practices bring the administration of justice into disrepute. Delay should not be indulged merely for the convenience of the advocates, or for the purpose of *367 frustrating an opposing party's attempt to obtain rightful redress or repose. It is not a justification that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay. Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client.
CODE COMPARISON:
DR 7-102(A)(1) provides that "A lawyer shall not ... file a suit, assert a position, conduct a defense (or) delay a trial ... when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another."
RULE 3.3 Candor Toward the Tribunal
(a) A lawyer shall not knowingly:
(1) make a false statement of material fact or law to a tribunal;
(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.
(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.
(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.
(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.
COMMENT:
The advocate's task is to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client is qualified by the advocate's duty of candor to the tribunal. However, an advocate does not vouch for the evidence submitted in a cause; the tribunal is responsible for assessing its probative value.
Representations by a Lawyer
An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client's behalf, and not assertions by the lawyer. Compare Rule 3.1. However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. The obligation prescribed in Rule 1.2(d) not to counsel a client to commit or assist the client in committing a fraud applies in litigation. Regarding compliance with Rule 1.2(d), see the Comment to that Rule. See also the Comment to Rule 8.4(b).
Misleading Legal Argument
Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in paragraph (a)(3), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction which has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking *368 to determine the legal premises properly applicable to the case.
False Evidence
When evidence that a lawyer knows to be false is provided by a person who is not the client, the lawyer must refuse to offer it regardless of the client's wishes.
When false evidence is offered by the client, however, a conflict may arise between the lawyer's duty to keep the client's revelations confidential and the duty of candor to the court. Upon ascertaining that material evidence is false, the lawyer should seek to persuade the client that the evidence should not be offered or, if it has been offered, that its false character should immediately be disclosed. If the persuasion is ineffective, the lawyer must take reasonable remedial measures.
Except in the defense of a criminal accused, the rule generally recognized is that, if necessary to rectify the situation, an advocate must disclose the existence of the client's deception to the court or to the other party. Such a disclosure can result in grave consequences to the client, including not only a sense of betrayal but also loss of the case and perhaps a prosecution for perjury. But the alternative is that the lawyer cooperate in deceiving the court, thereby subverting the truth-finding process which the adversary system is designed to implement. See Rule 1.2(d). Furthermore, unless it is clearly understood that the lawyer will act upon the duty to disclose the existence of false evidence, the client can simply reject the lawyer's advice to reveal the false evidence and insist that the lawyer keep silent. Thus the client could in effect coerce the lawyer into being a party to fraud on the court.
Perjury by a Criminal Defendant
Whether an advocate for a criminally accused has the same duty of disclosure has been intensely debated. While it is agreed that the lawyer should seek to persuade the client to refrain from perjurious testimony, there has been dispute concerning the lawyer's duty when that persuasion fails. If the confrontation with the client occurs before trial, the lawyer ordinarily can withdraw. Withdrawal before trial may not be possible, however, either because trial is imminent, or because the confrontation with the client does not take place until the trial itself, or because no other counsel is available.
The most difficult situation, therefore, arises in a criminal case where the accused insists on testifying when the lawyer knows that the testimony is perjurious. The lawyer's effort to rectify the situation can increase the likelihood of the client's being convicted as well as opening the possibility of a prosecution for perjury. On the other hand, if the lawyer does not exercise control over the proof, the lawyer participates, although in a merely passive way, in deception of the court.
Three resolutions of this dilemma have been proposed. One is to permit the accused to testify by a narrative without guidance through the lawyer's questioning. This compromises both contending principles; it exempts the lawyer from the duty to disclose false evidence but subjects the client to an implicit disclosure of information imparted to counsel. Another suggested resolution, of relatively recent origin, is that the advocate be entirely excused from the duty to reveal perjury if the perjury is that of the client. This is a coherent solution but makes the advocate a knowing instrument of perjury.
The other resolution of the dilemma is that the lawyer must reveal the client's perjury if necessary to rectify the situation. A criminal accused has a right to the assistance of an advocate, a right to testify and a right of confidential communication with counsel. However, an accused should not have a right to assistance of counsel in committing perjury. Furthermore, an advocate has an obligation, not only in professional ethics but under the law as well, to avoid implication in the commission of perjury or other falsification of evidence. See Rule 1.2(d).
Remedial Measures
If perjured testimony or false evidence has been offered, the advocate's proper *369 course ordinarily is to remonstrate with the client confidentially. If that fails, the advocate should seek to withdraw if that will remedy the situation. If withdrawal will not remedy the situation or is impossible, the advocate should make disclosure to the court. It is for the court then to determine what should be donemaking a statement about the matter to the trier of fact, ordering a mistrial or perhaps nothing. If the false testimony was that of the client, the client may controvert the lawyer's version of their communication when the lawyer discloses the situation to the court. If there is an issue whether the client has committed perjury, the lawyer cannot represent the client in resolution of the issue, and a mistrial may be unavoidable. An unscrupulous client might in this way attempt to produce a series of mistrials and thus escape prosecution. However, a second such encounter could be construed as a deliberate abuse of the right to counsel and as such a waiver of the right to further representation.
Constitutional Requirements
The general rulethat an advocate must disclose the existence of perjury with respect to a material fact, even that of a clientapplies to defense counsel in criminal cases, as well as in other instances. However, the definition of the lawyer's ethical duty in such a situation may be qualified by constitutional provisions for due process and the right to counsel in criminal cases. In some jurisdictions these provisions have been construed to require that counsel present an accused as a witness if the accused wishes to testify, even if counsel knows the testimony will be false. The obligation of the advocate under these Rules is subordinate to such a constitutional requirement.
Duration of Obligation
A practical time limit on the obligation to rectify the presentation of false evidence has to be established. The conclusion of the proceeding is a reasonably definite point for the termination of the obligation.
Refusing to Offer Proof Believed to be False
Generally speaking, a lawyer has authority to refuse to offer testimony or other proof that the lawyer believes is untrustworthy. Offering such proof may reflect adversely on the lawyer's ability to discriminate in the quality of evidence and thus impair the lawyer's effectiveness as an advocate. In criminal cases, however, a lawyer may, in some jurisdictions, be denied this authority by constitutional requirements governing the right to counsel.
Ex Parte Proceedings
Ordinarily, an advocate has the limited responsibility of presenting one side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. However, in an ex parte proceeding, such as an application for a temporary restraining order, there is no balance of pre-Sentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision.
CODE COMPARISON:
Rule 3.3(a)(1) is substantially identical to DR 7-102(A)(5), which provides that a lawyer shall not "knowingly make a false statement of law or fact."
Rule 3.3(a)(2) is implicit in DR 7-102(A)(3), which provides that "a lawyer shall not ... knowingly fail to disclose that which he is required by law to reveal."
Rule 3.3(a)(3) is identical to DR 7-106(B)(1).
With regard to Rule 3.3(a)(4), the first sentence of this subparagraph is similar to DR 7-102(A)(4), which provides that a lawyer shall not "knowingly use" perjured testimony or false evidence. The second sentence of Rule 3.3(a)(4) resolves an ambiguity in the Code concerning the action *370 required of a lawyer when he discovers that he has offered perjured testimony or false evidence. DR 7-102(A)(4), quoted above, does not expressly deal with this situation, but the prohibition against "use" of false evidence can be construed to preclude carrying through with a case based on such evidence when that fact has become known during the trial. DR 7-102(B)(1), also noted in connection with Rule 1.6, provides that "a lawyer who receives information clearly establishing that... his client has ... perpetrated a fraud upon ... a tribunal shall if the client does not rectify the situation ... reveal the fraud to the ... tribunal...." Since use of perjured testimony or false evidence is usually regarded as "fraud" upon the court, DR 7-102(B)(1) apparently requires disclosure by the lawyer in such circumstances. However, some states have amended DR 7-102(B)(1) in conformity with an ABA-recommended amendment to provide that the duty of disclosure does not apply when the "information is protected as a privileged communication." This qualification may be empty, for the rule of attorney-client privilege has been construed to exclude communications that further a crime, including the crime of perjury. On this interpretation of DR 7-102(B)(1), the lawyer has a duty to disclose the perjury.
Rule 3.3(c) confers discretion on the lawyer to refuse to offer evidence that he "reasonably believes" is false. This gives the lawyer more latitude than DR 7-102(A)(4), which prohibits the lawyer from offering evidence the lawyer "knows" is false.
There is no counterpart in the Code to paragraph (d).
RULE 3.4 Fairness to Opposing Party and Counsel
A lawyer shall not:
(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;
(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;
(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or
(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
(1) the person is a relative or an employee or other agent of a client; and
(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.
COMMENT:
The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like.
Documents and other items of evidence are often essential to establish a claim or defense. Subject to evidentiary privileges, the right of an opposing party, including the government, to obtain evidence through discovery or subpoena is an important procedural right. The exercise of that right *371 can be frustrated if relevant material is altered, concealed or destroyed. Applicable law in many jurisdictions makes it an offense to destroy material for purpose of impairing its availability in a pending proceeding or one whose commencement can be foreseen. Falsifying evidence is also generally a criminal offense. Paragraph (a) applies to evidentiary material generally, including computerized information.
With regard to paragraph (b), it is not improper to pay a witness's expenses or to compensate an expert witness on terms permitted by law. The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee.
Paragraph (f) permits a lawyer to advise employees of a client to refrain from giving information to another party, for the employees may identify their interests with those of the client. See also Rule 4.2.
CODE COMPARISON:
With regard to Rule 3.4(a), DR 7-109(A) provides that "a lawyer shall not suppress any evidence that he or his client has a legal obligation to reveal." DR 7-109(B) provides that "a lawyer shall not advise or cause a person to secrete himself ... for the purpose of making him unavailable as a witness...." DR 7-106(C)(7) provides that a lawyer shall not "intentionally or habitually violate any established rule of procedure or of evidence."
With regard to Rule 3.4(b), DR 7-102(B)(6) provides that a lawyer shall not "participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false." DR 7-109 provides that "a lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent on the content of his testimony or the outcome of the case. But a lawyer may advance, guarantee or acquiesce in the payment of: (1) expenses reasonably incurred by a witness in attending or testifying; (2) reasonable compensation to a witness for his loss of time in attending or testifying; (or) (3) a reasonable fee for the professional services of an expert witness." EC 7-28 states that "witnesses should always testify truthfully and should be free from any financial inducements that might tempt them to do otherwise."
Rule 3.4(c) is substantially similar to DR 7-106(A), which provides that "A lawyer shall not disregard ... a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling."
Rule 3.4(d) has no counterpart in the Code.
Rule 3.4(e) substantially incorporates DR 7-106(C)(1), (2), (3) and (4). DR 7-106(C)(2) proscribes asking a question "intended to degrade a witness or other person," a matter dealt with in Rule 4.4 DR 7-106(C)(5), providing that a lawyer shall not "fail to comply with known local customs of courtesy or practice," is too vague to be a rule of conduct enforceable as law.
With regard to Rule 3.4(f), DR 7-104(A)(2) provides that a lawyer shall not "give advice to a person who is not represented... other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client."
RULE 3.5 Impartiality and Decorum of the Tribunal
A lawyer shall not:
(a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law:
(b) communicate ex parte with such a person on the merits of the cause except as permitted by law; or
(c) engage in conduct intended to disrupt a tribunal.
COMMENT:
Many forms of improper influence upon a tribunal are proscribed by criminal law. Others are specified in the ABA Model Code of Judicial Conduct, with which an advocate should be familiar. A lawyer is required to avoid contributing to a violation of such provisions.
*372 The advocate's function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants. A lawyer may stand firm against abuse by a judge but should avoid reciprocation; the judge's default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.
CODE COMPARISON:
With regard to Rule 3.5(a), DR 7-108(A) provides that "before the trial of a case a lawyer ... shall not communicate with ... anyone he knows to be a member of the venire...." DR 7-108(B) provides that "during the trial of a case ... a lawyer ... shall not communicate with ... a juror concerning the case." DR 7-109(C) provides that a lawyer shall not "communicate... as to the merits of the cause with a judge or an official before whom the proceeding is pending except ... upon adequate notice to opposing counsel ... (or) as otherwise authorized by law."
With regard to Rule 3.5(b), DR 7-106(C)(6) provides that a lawyer shall not "engage in undignified or discourteous conduct which is degrading to a tribunal."
RULE 3.6 Trial Publicity
(a) A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding.
(b) A statement referred to in paragraph (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in incarceration, and the statement relates to:
(1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;
(2) in a criminal case or proceeding that could result in incarceration, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission, or statement given by a defendant or suspect or that person's refusal or failure to make a statement;
(3) the performance or results of any examination or test or the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;
(4) any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration;
(5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial; or
(6) the fact that a defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent until and unless proven guilty.
(c) Notwithstanding paragraph (a) and (b)(l-5), a lawyer involved in the investigation or litigation of a matter may state without elaboration:
(1) the general nature of the claim or defense;
(2) the information contained in a public record;
(3) that an investigation of the matter is in progress, including the general scope of the investigation, the offense or claim or defense involved and, except when prohibited by law, the identity of the persons involved;
(4) the scheduling or result of any step in litigation;

*373 (5) a request for assistance in obtaining evidence and information necessary thereto;
(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and
(7) in a criminal case:
(i) the identity, residence, occupation and family status of the accused;
(ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person;
(iii) the fact, time and place of arrest; and
(iv) the identity of investigating and arresting officers or agencies and the length of the investigation.
COMMENT:
It is difficult to strike a balance between protecting the right to a fair trial and safeguarding the right of free expression. Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved. If there were no such limits, the result would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence. On the other hand, there are vital social interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves. The public has a right to know about threats to its safety and measures aimed at assuring its security. It also has a legitimate interest in the conduct of judicial proceedings, particularly in matters of general public concern. Furthermore, the subject matter of legal proceedings is often of direct significance in debate and deliberation over questions of public policy.
No body of rules can simultaneously satisfy all interests of fair trial and all those of free expression. The formula in this Rule is based upon the ABA Model Code of Professional Responsibility and the ABA Standards Relating to Fair Trial and Free Press, as amended in 1978.
Special rules of confidentiality may validly govern proceedings in juvenile, domestic relations and mental disability proceedings, and perhaps other types of litigation. Rule 3.4(c) requires compliance with such Rules.
CODE COMPARISON:
Rule 3.6 is similar to DR 7-107, except as follows: First, Rule 3.6 adopts the general criteria of "substantial likelihood of materially prejudicing an adjudicative proceeding" to describe impermissible conduct. Second, Rule 3.6 transforms the particulars in DR 7-107 into an illustrative compilation that gives fair notice of conduct ordinarily posing unacceptable dangers to the fair administration of justice. Finally, Rule 3.6 omits DR 7-107(C)(7), which provides that a lawyer may reveal "at the time of seizure, a description of the physical evidence seized, other than a confession, admission or statement." Such revelations may be substantially prejudicial and are frequently the subject of pretrial suppression motions, which, if successful, may be circumvented by prior disclosure to the press.
RULE 3.7 Lawyer as Witness
A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.
COMMENT:
Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.
The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis *374 of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.
Paragraph (1) recognizes that if the testimony will be uncontested, the ambiguities in the dual role are purely theoretical. Paragraph (2) recognizes that where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue. Moreover, in such a situation the judge has first hand knowledge of the matter in issue; hence, there is less dependence on the adversary process to test the credibility of the testimony.
Apart from these two exceptions, paragraph (3) recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness. The principle of imputed disqualification stated in Rule 1.10 has no application to this aspect of the problem.
CODE COMPARISON:
DR 5-102(A) prohibits a lawyer, or the lawyer's firm, from serving as advocate if the lawyer "learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client." DR 5-102(B) provides that a lawyer, and the lawyer's firm, may continue representation if the "lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client... until it is apparent that his testimony is or may be prejudicial to his client." DR 5-101(B) permits a lawyer to testify while `representing a client: "(1) If the testimony will relate solely to an uncontested matter; (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client; (4) As to any matter if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."
The exception stated in (1) consolidates provisions of DR 5-101(B)(1) and (2). Testimony relating to a formality, referred to in DR 5-101(B)(2), in effect defines the phrase "uncontested issue," and is redundant.
RULE 3.8 Special Responsibilities of a Prosecutor
The prosecutor in a criminal case shall:
(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;
(b) make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel;
(c) not seek to obtain from an unrepresented accused a waiver of important pretrial rights, such as the right to a preliminary hearing;
(d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal; and
(e) exercise reasonable care to prevent investigators, law enforcement personnel, *375 employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6.
COMMENT:
A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence. Precisely how far the prosecutor is required to go in this direction is a matter of debate and varies in different jurisdictions. Many jurisdictions have adopted the ABA Standards of Criminal Justice Relating to Prosecution Function, which in turn are the product of prolonged and careful deliberation by lawyers experienced in both criminal prosecution and defense. See also Rule 3.3(d), governing ex parte proceedings, among which grand jury proceedings are included. Applicable law may require other measures by the prosecutor and knowing disregard of those obligations or a systematic abuse of prosecutorial discretion could constitute a violation of Rule 8.4.
Paragraph (c) does not apply to an accused appearing pro se with the approval of the tribunal. Nor does it forbid the lawful questioning of a suspect who has knowingly waived the rights to counsel and silence.
The exception in paragraph (d) recognizes that a prosecutor may seek an appropriate protective order from the tribunal if disclosure of information to the defense could result in substantial harm to an individual or to the public interest.
The issuance of a grand jury indictment ordinarily indicates probable cause for the prosecutor to proceed. This rule does not affect the refusal of the prosecutor to proceed. This rule covers the Attorney General and staff, Prosecuting Attorneys and staffs, City Attorneys and staffs and all others who exercise prosecutorial functions.
CODE COMPARISON:
DR 7-103(A) provides that "A public prosecutor ... shall not institute ... criminal charges when he knows or it is obvious that the charges are not supported by probable cause." DR 7-103(B) provides that "A public prosecutor ... shall make timely disclosure ... of the existence of evidence, known to the prosecutor ... that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment."
RULE 3.9 Advocate in Nonadjudicative Proceedings
A lawyer representing a client before a legislative or administrative tribunal in a nonadjudicative proceeding shall disclose that the appearance is in a representative capacity and shall conform to the provisions of Rules 3.3(a) through (c), 3.4(a) through (c), and 3.5.
COMMENT:
In representation before bodies such as legislatures, municipal councils, and executive and administrative agencies acting in a rule-making or policy-making capacity, lawyers present facts, formulate issues and advance argument in the matters under consideration. The decision-making body, like a court, should be able to rely on the integrity of the submissions made to it. A lawyer appearing before such a body should deal with the tribunal honestly and in conformity with applicable rules of procedure.
Lawyers have no exclusive right to appear before nonadjudicative bodies, as they do before a court. The requirements of this Rule therefore may subject lawyers to regulations inapplicable to advocates who are not lawyers. However, legislatures and administrative agencies have a right to expect lawyers to deal with them as they deal with courts.
This Rule does not apply to representation of a client in a negotiation or other bilateral transaction with a governmental agency; representation in such a transaction is governed by Rules 4.1 through 4.4.
*376 CODE COMPARISON:
EC 7-15 states that "A lawyer appearing before an administrative agency, regardless of the nature of the proceeding it is conducting, has the continuing duty to advance the cause of his client within the bounds of the law." EC 7-16 states that "When a lawyer appears in connection with proposed legislation, he ... should comply with applicable laws and regulations." EC 8-5 states that "Fraudulent, deceptive, or otherwise illegal conduct by a participant in a proceeding before a ... legislative body should never be participated in ... by lawyers." DR 7-106(B)(1) provides that that "In presenting a matter to a tribunal, a lawyer shall disclose ... unless privileged or irrelevant, the identity of the clients he represents and of the persons who employed him."

TRANSACTIONS WITH PERSONS OTHER THAN CLIENTS
RULE 4.1 Truthfulness in Statements to Others
In the course of representing a client a lawyer shall not knowingly:
(a) make a false statement of material fact or law to a third person; or
(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.
COMMENT:
Misrepresentation
A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by failure to act.
Statements of Fact
This Rule refers to statements of fact. Whether a particular statement should be regarded as one of fact can depend on the circumstances. Under generally accepted conventions in negotiation, certain types of statements ordinarily are not taken as statements of material fact. Estimates of price or value placed on the subject of a transaction and a party's intentions as to an acceptable settlement of a claim are in this category, and so is the existence of an undisclosed principal except where nondisclosure of the principal would constitute fraud.
Fraud by Client
Paragraph (b) recognizes that substantive law may require a lawyer to disclose certain information to avoid being deemed to have assisted the client's crime or fraud. The requirement of disclosure created by this paragraph is, however, subject to the obligations created by Rule 1.6.
CODE COMPARISON:
Rule 4.1(a) is substantially similar to DR 7-102(A)(5), which states that "In his representation of a client, a lawyer shall not ... knowingly make a false statement of law or fact."
With regard to Rule 4.1(b), DR 7-102(A)(3) provides that a lawyer shall not "conceal or knowingly fail to disclose that which he is required by law to reveal."
RULE 4.2 Communication with Person Represented by Counsel
In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
COMMENT:
This Rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter. Also, parties to a matter may communicate directly with *377 each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.
In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f).
This Rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.
CODE COMPARISON:
This Rule is substantially identical to DR 7-104(A)(1).
RULE 4.3 Dealing with Unrepresented Person
In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.
COMMENT:
An unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law even when the lawyer represents a client. During the course of a lawyer's representation of a client, the lawyer should not give advice to an unrepresented person other than the advice to obtain counsel.
CODE COMPARISON:
There is no direct counterpart to this Rule in the Code. DR 7-104(A)(2) provides that a lawyer shall not "[g]ive advice to a person who is not represented by a lawyer, other than the advice to secure counsel...."
RULE 4.4 Respect for Rights of Third Persons
In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.
COMMENT:
Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of third persons. It is impractical to catalogue all such rights, but they include legal restrictions on methods of obtaining evidence from third persons.
CODE COMPARISON:
DR 7-106(C)(2) provides that a lawyer shall not "ask any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person." DR 7-102(A)(1) provides that a lawyer shall not "take ... action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another." DR 7-108(D) provides that "after discharge of the jury... the lawyer shall not ask questions or make comments to a member of that jury that are calculated merely to harass or embarrass the juror...." DR 7-108(E) provides that "a lawyer shall not conduct... a vexatious or harassing investigation of either a venireman or a juror."

LAW FIRMS AND ASSOCIATIONS
RULE 5.1 Responsibilities of a Partner or Supervisory Lawyer
(a) A partner in a law firm shall make reasonable efforts to ensure that the firm *378 has in effect measures giving reasonable assurance that all lawyers in the firm conform to the rules of professional conduct.
(b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the rules of professional conduct.
(c) A lawyer shall be responsible for another lawyer's violation of the rules of professional conduct if:
(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
(2) the lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.
COMMENT:
Paragraphs (a) and (b) refer to lawyers who have supervisory authority over the professional work of a firm or legal department of a government agency. This includes members of a partnership and the shareholders in a law firm organized as a professional corporation; lawyers having supervisory authority in the law department of an enterprise or government agency; and lawyers who have intermediate managerial responsibilities in a firm.
The measures required to fulfill the responsibility prescribed in paragraphs (a) and (b) can depend on the firm's structure and the nature of its practice. In a small firm, informal supervision and occasional admonition ordinarily might be sufficient. In a large firm, or in practice situations in which intensely difficult ethical problems frequently arise, more elaborate procedures may be necessary. Some firms, for example, have a procedure whereby junior lawyers can make confidential referral of ethical problems directly to a designated senior partner or special committee. See Rule 5.2. Firms, whether large or small, may also rely on continuing legal education in professional ethics. In any event, the ethical atmosphere of a firm can influence the conduct of all its members and a lawyer having authority over the work of another may not assume that the subordinate lawyer will inevitably conform to the Rules.
Paragraph (c)(1) expresses a general principle of responsibility for acts of another. See also Rule 8.4(a).
Paragraph (c)(2) defines the duty of a lawyer having direct supervisory authority over performance of specific legal work by another lawyer. Whether a lawyer has such supervisory authority in particular circumstances is a question of fact. Partners of a private firm have at least indirect responsibility for all work being done by the firm, while a partner in charge of a particular matter ordinarily has direct authority over other firm lawyers engaged in the matter. Appropriate remedial action by a partner would depend on the immediacy of the partner's involvement and the seriousness of the misconduct. The supervisor is required to intervene to prevent avoidable consequences of misconduct if the supervisor knows that the misconduct occurred. Thus, if a supervising lawyer knows that a subordinate misrepresented a matter to an opposing party in negotiation, the supervisor as well as the subordinate has a duty to correct the resulting misapprehension.
Professional misconduct by a lawyer under supervision could reveal a violation of paragraph (b) on the part of the supervisory lawyer even though it does not entail a violation of paragraph (c) because there was no direction, ratification or knowledge of the violation.
Apart from this Rule and Rule 8.4(a), a lawyer does not have disciplinary liability for the conduct of a partner, associate or subordinate. Whether a lawyer may be liable civilly or criminally for another lawyer's conduct is a question of law beyond the scope of these Rules.
*379 CODE COMPARISON:
There is no direct counterpart to this Rule in the Code. DR 1-103(A) provides that "A lawyer possessing unprivileged knowledge of a violation of DR 1-102 shall report such knowledge to ... authority empowered to investigate or act upon such violation."
RULE 5.2 Responsibilities of a Subordinate Lawyer
(a) A lawyer is bound by the rules of professional conduct notwithstanding that the lawyer acted at the direction of another person.
(b) A subordinate lawyer does not violate the rules of professional conduct if that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty.
COMMENT:
Although a lawyer is not relieved of responsibility for a violation by the fact that the lawyer acted at the direction of a supervisor, that fact may be relevant in determining whether a lawyer had the knowledge required to render conduct a violation of the Rules. For example, if a subordinate filed a frivolous pleading at the direction of a supervisor, the subordinate would not be guilty of a professional violation unless the subordinate knew of the document's frivolous character.
When lawyers in a supervisor-subordinate relationship encounter a matter involving professional judgment as to ethical duty, the supervisor may assume responsibility for making the judgment. Otherwise a consistent course of action or position could not be taken. If the question can reasonably be answered only one way, the duty of both lawyers is clear and they are equally responsible for fulfilling it. However, if the question is reasonably arguable, someone has to decide upon the course of action. That authority ordinarily reposes in the supervisor, and a subordinate may be guided accordingly. For example, if a question arises whether the interests of two clients conflict under Rule 1.7, the supervisor's reasonable resolution of the question should protect the subordinate professionally if the resolution is subsequently challenged.
CODE COMPARISON:
There is no counterpart to this Rule in the Code.
RULE 5.3 Responsibilities Regarding Nonlawyer Assistants
With respect to a nonlawyer employed or retained by or associated with a lawyer:
(a) a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if:
(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
(2) the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.
COMMENT:
Lawyers generally employ assistants in their practice, including secretaries, investigators, law student interns, and paraprofessionals. Such assistants, whether employees or independent contractors, act for the lawyer in rendition of the lawyer's professional services. A lawyer should give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information *380 relating to representation of the client, and should be responsible for their work product. The measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline.
CODE COMPARISON:
There is no direct counterpart to this Rule in the Code. DR 4-101(D) provides that "A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client...." DR 7-107(J) provides that "a lawyer shall exercise reasonable care to prevent his employees and associates from making an extrajudicial statement that he would be prohibited from making under DR 7-107."
RULE 5.4 Professional Independence of a Lawyer
(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that:
(1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons;
(2) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer; and
(3) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.
(b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.
(c) A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.
(d) A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if:
(1) a nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration;
(2) a nonlawyer is a corporate director or officer thereof; or
(3) a nonlawyer has the right to direct or control the professional judgment of a lawyer.
COMMENT:
The provisions of this Rule express traditional limitations on sharing fees. These limitations are to protect the lawyer's professional independence of judgment. Where someone other than the client pays the lawyer's fee or salary, or recommends employment of the lawyer, that arrangement does not modify the lawyer's obligation to the client. As stated in paragraph (c), such arrangements should not interfere with the lawyer's professional judgment.
CODE COMPARISON:
DR 3-102(A) provides that "A lawyer or law firm shall not share legal fees with a nonlawyer...." DR 3-103(A) provides that "A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law." DR 5-107(B) provides that "A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services." DR 5-107(C) provides that "A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if: (1) A nonlawyer owns any interests therein, except that a fiduciary *381 representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration; (2) A nonlawyer is a corporate director or officer thereof; or (3) A nonlawyer has the right to direct or control the professional judgment of the lawyer." EC 5-24 states that "A lawyer should not practice with or in the form of a professional legal corporation, even though the corporate form is permitted by law, if any director, officer, or stockholder of it is a nonlawyer. Although a lawyer may be employed by a business corporation with nonlawyers serving as directors or officers, and they necessarily have the right to make decisions of business policy, a lawyer must decline to accept direction of his professional judgment from any layman. Various types of legal aid offices are administered by boards of directors composed of lawyers and laymen. A lawyer should not accept employment from such an organization unless the board sets only broad policies and there is no interference in the relationship of the lawyer and the individual client he serves. Where a lawyer is employed by an organization, a written agreement that defines the relationship between him and the organization and provides for his independence is desirable since it may serve to prevent misunderstanding as to their respective roles. Although other innovations in the means of supplying legal counsel may develop, the responsibility of the lawyer to maintain his professional independence remains constant...."
RULE 5.5 Unauthorized Practice of Law
A lawyer shall not:
(a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or
(b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.
COMMENT:
The definition of the practice of law is established by law and varies from one jurisdiction to another. Whatever the definition, limiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons. Paragraph (b) does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work. See Rule 5.3. Likewise, it does not prohibit lawyers from providing professional advice and instruction to nonlawyers whose employment requires knowledge of law; for example, claims adjusters, employees of financial or commercial institutions, social workers, accountants and persons employed in government agencies. In addition, a lawyer may counsel nonlawyers who wish to proceed pro se.
CODE COMPARISON:
With regard to Rule 5.5(a), DR 3-101(B) of the Model Code provides that "a lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction."
With regard to Rule 5.5(b), DR 3-101(A) of the Model Code provides that "a lawyer shall not aid a nonlawyer in the unauthorized practice of law."
RULE 5.6 Restrictions on Right to Practice
A lawyer shall not participate in offering or making:
(a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
(b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.
COMMENT:
An agreement restricting the right of partners or associates to practice after leaving a firm not only limits their professional autonomy but also limits the freedom of clients to choose a lawyer. Paragraph *382 (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.
Paragraph (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client.
CODE COMPARISON:
Rule 5.6 is substantially similar to DR 2-108.

PUBLIC SERVICE
RULE 6.1 Pro Bono Publico Service
A lawyer should render public interest legal service. A lawyer may discharge this responsibility by providing professional services at no fee or a reduced fee to persons of limited means or to public service or charitable groups or organizations, by service in activities for improving the law, the legal system or the legal profession, and by financial support for organizations that provide legal services to persons of limited means.
COMMENT:
The ABA House of Delegates has formally acknowledged "the basic responsibility of each lawyer engaged in the practice of law to provide public interest legal services" without fee, or at a substantially reduced fee, in one or more of the following areas: poverty law, civil rights law, public rights law, charitable organization representation and the administration of justice. This Rule expresses that policy but is not intended to be enforced through disciplinary process.
The rights and responsibilities of individuals and organizations in the United States are increasingly defined in legal terms. As a consequence, legal assistance in coping with the web of statutes, rules and regulations is imperative for persons of modest and limited means, as well as for the relatively well-to-do.
The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer, and personal involvement in the problems of the disadvantaged can be one of the most rewarding experiences in the life of a lawyer. Every lawyer, regardless of professional prominence or professional workload, should find time to participate in or otherwise support the provision of legal services to the disadvantaged. The provision of free legal services to those unable to pay reasonable fees continues to be an obligation of each lawyer as well as the profession generally, but the efforts of individual lawyers are often not enough to meet the need. Thus, it has been necessary for the profession and government to institute additional programs to provide legal services. Accordingly, legal aid offices, lawyer referral services and other related programs have been developed, and others will be developed by the profession and government. Every lawyer should support all proper efforts to meet this need for legal services.
CODE COMPARISON:
There is no counterpart of Rule 6.1 in the Disciplinary Rules of the Code. EC 2-25 states that "The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer.... Every lawyer, regardless of professional prominence or professional workload, should find time to participate in serving the disadvantaged." EC 8-9 states that "The advancement of our legal system is of vital importance in maintaining the rule of law ... and lawyers should encourage, and should aid in making, needed changes and improvements." EC 8-3 states that "Those persons unable to pay for legal services should be provided needed services."
RULE 6.2 Accepting Appointments
A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as:
(a) representing the client is likely to result in violation of the rules of professional conduct or other law;
(b) representing the client is likely to result in an unreasonable financial burden on the lawyer; or
*383 (c) the client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client.
COMMENT:
A lawyer ordinarily is not obliged to accept a client whose character or cause the lawyer regards as repugnant. The lawyer's freedom to select clients is, however, qualified. All lawyers have a responsibility to assist in providing pro bono publico service. See Rule 6.1. An individual lawyer fulfills this responsibility by accepting a fair share of unpopular matters or indigent or unpopular clients. A lawyer may also be subject to appointment by a court to serve unpopular clients or persons unable to afford legal services.
Appointed Counsel
For good cause a lawyer may seek to decline an appointment to represent a person who cannot afford to retain counsel or whose cause is unpopular. Good cause exists if the lawyer could not handle the matter competently, see Rule 1.1, or if undertaking the representation would result in an improper conflict of interest, for example, when the client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client. A lawyer may also seek to decline an appointment if acceptance would be unreasonably burdensome, for example, when it would impose a financial sacrifice so great as to be unjust.
An appointed lawyer has the same obligations to the client as retained counsel, including the obligations of loyalty and confidentiality, and is subject to the same limitations on the client-lawyer relationship, such as the obligation to refrain from assisting the client in violation of the Rules.
CODE COMPARISON:
There is no counterpart to Rule 6.2 in the Disciplinary Rules of the Code. EC 2-29 states that "When a lawyer is appointed by a court or requested by a bar association to undertake representation of a person unable to obtain counsel, whether for financial or other reasons, he should not seek to be excused from undertaking the representation except for compelling reason. Compelling reasons do not include such factors as the repugnance of the subject matter of the proceeding, the identity or position of a person involved in the case, the belief of the lawyer that the defendant in a criminal proceeding is guilty, or the belief of the lawyer regarding the merits of the civil case." EC 2-30 states that "a lawyer should decline employment if the intensity of his personal feelings, as distinguished from a community attitude, may impair his effective representation of a prospective client."
RULE 6.3 Membership in Legal Services Organization
A lawyer may serve as a director, officer or member of a legal services organization, apart from the law firm in which the lawyer practices, notwithstanding that the organization serves persons having interests adverse to a client of the lawyer. The lawyer shall not knowingly participate in a decision or action of the organization:
(a) if participating in the decision would be incompatible with the lawyer's obligations to a client under Rule 1.7; or
(b) where the decision could have a material adverse effect on the representation of a client of the organization whose interests are adverse to a client of the lawyer.
COMMENT:
Lawyers should be encouraged to support and participate in legal service organizations. A lawyer who is an officer or a member of such an organization does not thereby have a client-lawyer relationship with persons served by the organization. However, there is potential conflict between the interests of such persons and the interests of the lawyer's clients. If the possibility of such conflict disqualified a lawyer from serving on the board of a legal services organization, the profession's involvement in such organizations would be severely curtailed.
It may be necessary in appropriate cases to reassure a client of the organization that *384 the representation will not be affected by conflicting loyalties of a member of the board. Established, written policies in this respect can enhance the credibility of such assurances.
CODE COMPARISON:
There is no counterpart to this Rule in the Code.
RULE 6.4 Law Reform Activities Affecting Client Interests
A lawyer may serve as a director, officer or member of an organization involved in reform of the law or its administration notwithstanding that the reform may affect the interests of a client of the lawyer. When the lawyer knows that the interests of a client may be materially benefitted by a decision in which the lawyer participates, the lawyer shall disclose that fact but need not identify the client.
COMMENT:
Lawyers involved in organizations seeking law reform generally do not have a client-lawyer relationship with the organization. Otherwise, it might follow that a lawyer could not be involved in a bar association law reform program that might indirectly affect a client. See also Rule 1.2(b). For example, a lawyer specializing in antitrust litigation might be regarded as disqualified from participating in drafting revisions of rules governing that subject. In determining the nature and scope of participation in such activities, a lawyer should be mindful of obligations to clients under other Rules, particularly Rule 1.7. A lawyer is professionally obligated to protect the integrity of the program by making an appropriate disclosure within the organization when the lawyer knows a private client might be materially benefitted.
CODE COMPARISON:
There is no counterpart to this Rule in the Code.

INFORMATION ABOUT LEGAL SERVICES
RULE 7.1 Communications Concerning a Lawyer's Services
A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:
(a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading:
(b) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the rules of professional conduct or other law; or
(c) compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated.
COMMENT:
This Rule governs all communications about a lawyer's services, including advertising permitted by Rule 7.2. Whatever means are used to make known a lawyer's services, statements about them should be truthful. The prohibition in paragraph (b) of statements that may create "unjustified expectations" would ordinarily preclude advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer's record in obtaining favorable verdicts, and advertisements containing client endorsements. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.
CODE COMPARISON:
DR 2-101 provides that "A lawyer shall not ... use ... any form of public communication containing a false, fraudulent, misleading, deceptive, self-laudatory or unfair statement of claim." DR 2-101(B) provides that a lawyer "may publish or broadcast... the following information ... in the geographic area or areas in which the lawyer resides or maintains offices or in which a significant part of the lawyer's clientele resides, provided that the information ... complies with DR 2-101(A), and is presented in a dignified manner...." DR 2-101(B) *385 then specifies 25 categories of information that may be disseminated. DR 2-101(C) provides that "Any person desiring to expand the information authorized for disclosure in DR 2-101(B), or to provide for its dissemination through other forums may apply to (the agency having jurisdiction under state law).... The relief granted in response to any such application shall be promulgated as an amendment to DR 2-101(B), universally applicable to all lawyers."
RULE 7.2 Advertising
(a) Subject to the requirements of Rule 7.1, a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, outdoor, radio or television, or through written communication not involving solicitation as defined in Rule 7.3.
(b) A copy or recording of an advertisement or written communication shall be kept for five years after its last dissemination along with a record of when and where it was used.
(c) A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertising or written communication permitted by this rule and may pay the usual charges of a not-for-profit lawyer referral service or other legal service organization.
(d) Any communication made pursuant to this rule shall include the name of at least one lawyer responsible for its content.
COMMENT:
To assist the public in obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. Advertising involves an active quest for clients, contrary to the tradition that a lawyer should not seek clientele. However, the public's need to know about legal services can be fulfilled in part through advertising. This need is particularly acute in the case of persons of moderate means who have not made extensive use of legal services. The interest in expanding public information about legal services ought to prevail over considerations of tradition. Nevertheless, advertising by lawyers entails the risk of practices that are misleading or overreaching.
This Rule permits public dissemination of information concerning a lawyer's name or firm name, address and telephone number; the kinds of services the lawyer will undertake; the basis on which the lawyer's fees are determined, including prices for specific services and payment and credit arrangements; a lawyer's foreign language ability; names of references and, with their consent, names of clients regularly represented; and other information that might invite the attention of those seeking legal assistance.
Questions of effectiveness and taste in advertising are matters of speculation and subjective judgment. Some jurisdictions have had extensive prohibitions against television advertising, against advertising going beyond specified facts about a lawyer, or against "undignified" advertising. Television is now one of the most powerful media for getting information to the public, particularly persons of low and moderate income; prohibiting television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. Limiting the information that may be advertised has a similar effect and assumes that the bar can accurately forecast the kind of information that the public would regard as relevant.
Neither this Rule nor Rule 7.3 prohibits communications authorized by law, such as notice to members of a class in class action litigation.
Record of Advertising
Paragraph (b) requires that a record of the content and use of advertising be kept in order to facilitate enforcement of this Rule. It does not require that advertising be subject to review prior to dissemination. Such a requirement would be burdensome *386 and expensive relative to its possible benefits, and may be of doubtful constitutionality.
Paying Others to Recommend a Lawyer
A lawyer is allowed to pay for advertising permitted by this Rule, but otherwise is not permitted to pay another person for channeling professional work. This restriction does not prevent an organization or person other than the lawyer from advertising or recommending the lawyer's services. Thus, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may participate in not-for-profit lawyer referral programs and pay the usual fees charged by such programs. Paragraph (c) does not prohibit paying regular compensation to an assistant, such as a secretary, to prepare communications permitted by this Rule.
CODE COMPARISON:
With regard to Rule 7.2(a), DR 2-101(B) provides that a lawyer "may publish or broadcast, subject to DR 2-103 ..., in print media ... or television or radio...."
With regard to Rule 7.2(b), DR 2-101(D) provides that "if the advertisement is communicated over television or radio ..., a recording of the actual transmission shall be retained by the lawyer."
With regard to Rule 7.2(c), DR 2-103(B) provides that "If the advertisement is comsate or give anything of value to a person or organization to recommend or secure his employment ... except that he may pay the usual and reasonable fees or dues charged by any of the organizations listed in DR 2-103(D)." (DR 2-103(D) refers to legal aid and other legal services organizations.) DR 2-101(1) provides that "A lawyer shall not compensate or give anything of value to representatives of the press, radio, television, or other communication medium in anticipation of or in return for professional publicity in a news item."
There is no counterpart to Rule 7.2(d) in the Code.
RULE 7.3 Direct Contact with Prospective Clients
A lawyer may not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, by mail, in-person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. The term "solicit" includes contact in person, by telephone or telegraph, by letter or other writing, or by other communication directed to a specific recipient, but does not include letters addressed or advertising circulars distributed generally to persons not known to need legal services of the kind provided by the lawyer in a particular matter, but who are so situated that they might in general find such services useful. Written communications shall be clearly marked "advertising" and copies thereof must be kept for five years.
COMMENT
There is a potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services. It subjects the lay person to the private importuning of a trained advocate, in a direct interpersonal encounter. A prospective client often feels overwhelmed by the situation giving rise to the need for legal services, and may have an impaired capacity for reason, judgment and protective self-interest. Furthermore, the lawyer seeking the retainer is faced with a conflict stemming from the lawyer's own interest, which may color the advice and representation offered the vulnerable prospect.
The situation is therefore fraught with the possibility of undue influence, intimidation, and over-reaching. This potential for abuse inherent in direct solicitation of prospective clients justifies its prohibition, particularly since lawyer advertising permitted under Rule 7.2 offers an alternative means of communicating necessary information to those who may be in need of legal services.
Advertising makes it possible for a prospective client to be informed about the need for legal services, and about the qualifications *387 of available lawyers and law firms, without subjecting the prospective client to direct personal persuasion that may overwhelm the client's judgment.
The use of general advertising to transmit information from lawyer to prospective client, rather than direct private contact, will help to assure that the information flows cleanly as well as freely. Advertising is out in public view, thus subject to scrutiny by those who know the lawyer. This informal review is itself likely to help guard against statements and claims that might constitute false or misleading communications, in violation of Rule 7.1. Direct, private communications from a lawyer to a prospective client are not subject to such third-scrutiny and consequently are much more likely to approach (and occasionally cross) the dividing line between accurate representations and those that are false and misleading.
These dangers attend direct solicitation whether in-person or by mail. Direct mail solicitation cannot be effectively regulated by means less drastic than outright prohibition. One proposed safeguard is to require that the designation "Advertising" be stamped on any envelope containing a solicitation letter. This would do nothing to assure the accuracy and reliability of the contents. Another suggestion is that solicitation letters be filed with a state regulatory agency. This would be ineffective as a practical matter. State lawyer discipline agencies struggle for resources to investigate specific complaints, much less for those necessary to screen lawyers' mail solicitation material. Even if they could examine such materials, agency staff members are unlikely to know anything about the lawyer or about the prospective client's underlying problem. Without such knowledge they cannot determine whether the lawyer's representations are misleading. In any event, such review would be after the fact, potentially too late to avert the undesirable consequences of disseminating false and misleading material.
General mailings not speaking to a specific matter do not pose the same danger of abuse as targeted mailings, and therefore are not prohibited by this Rule. The representations made in such mailings are necessarily general rather than tailored, less importuning than informative. They are addressed to recipients unlikely to be specially vulnerable at the time, hence who are likely to be more skeptical about unsubstantiated claims. General mailings not addressed to recipients involved in a specific legal matter or incident, therefore, more closely resemble permissible advertising rather than prohibited solicitation.
Similarly, this Rule would not prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for its members, insureds, beneficiaries or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement which he or his firm is willing to offer. This form of communication is not directed to a specific prospective client known to need legal services related to a particular matter. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity which the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under Rule 7.2.
CODE COMPARISON:
DR 2-104(A) provides with certain exceptions that "a lawyer who has given in-person unsolicited advice to a layperson that he should obtain counsel or take legal action shall not accept employment resulting from that advice...." The exceptions include DR 2-104(A)(1), which provides that "A lawyer may accept employment by a close friend, relative, former client (if the advice is germane to the former employment), or one whom the lawyer reasonably believes to be a client." DR 2-104(A)(2) through DR 2-104(A)(5) provide other exceptions *388 relating, respectively, to employment resulting from public educational programs, recommendation by a legal assistance organization, public speaking or writing and representing members of a class in class action litigation.
RULE 7.4 Communication of Fields of Practice
A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is a specialist except as follows:
(a) a lawyer admitted to engage in patent practice before the United States Patent and Trademark Office may use the designation "patent attorney" or a substantially similar designation:
(b) a lawyer engaged in admiralty practice may use the designation "admiralty," "proctor in admiralty" or a substantially similar designation; and
A lawyer who has been recognized as a specialist under the Arkansas Plan of Specialization approved by the Arkansas Supreme Court may communicate the fact during the period that he or she is a "Board Recognized Specialist in (insert field in which recognized) Law" under the plan.
COMMENT:
This Rule permits a lawyer to indicate areas of practice in communications about the lawyer's services: for example, in a telephone directory or other advertising. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, stating that the lawyer is a "specialist" or that the lawyer's practice "is limited to" or "concentrated in" particular fields is not permitted. These terms have acquired a secondary meaning implying formal recognition as a specialist. Hence, use of these terms may be misleading unless the lawyer is certified or recognized in accordance with procedures in the state where the lawyer is licensed to practice.
Recognition of specialization in patent matters is a matter of long-established policy of the Patent and Trademark Office. Designation of admiralty practice has a long historical tradition associated with maritime commerce and the federal courts.
CODE COMPARISON:
DR 2-105(A) provides that "A lawyer shall not hold himself out publicly as a specialist, as practicing in certain areas of law or as limiting his practice ... except as follows:
"(1) A lawyer admitted to practice before the United States Patent and Trademark Office may use the designation `Patents,' `Patent Attorney,' `Patent Lawyer,' or `Registered Patent Attorney' or any combination of those terms, on his letterhead and office sign.
"(2) A lawyer who publicly discloses fields of law in which the lawyer ... practices or states his practice is limited to one or more fields of law shall do so by using designations and definitions authorized and approved by the agency having jurisdiction of the subject under state law.
"(3) A lawyer who is certified as a specialist in a particular field of law or law practice by the authority having jurisdiction under state law over the subject of specialization by lawyers may hold himself out as such, but only in accordance with the rules prescribed by that authority."
EC 2-14 states that "In the absence of state controls to insure the existence of special competence, a lawyer should not be permitted to hold himself out as a specialist, other than in the fields of admiralty, trademark, and patent law where a holding out as a specialist historically has been permitted."
RULE 7.5 Firm Names and Letterheads
(a) A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of Rule 7.1
*389 (b) A law firm with offices in more than one jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.
(c) The name of a lawyer holding a public office shall not be used in the name of a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm.
(d) Lawyers may state or imply that they practice in a partnership or other organization only when that is the fact.
COMMENT:
A firm may be designated by the names of all or some of its members, by the names of deceased members where there has been a continuing succession in the firm's identity or by a trade name such as the "ABC Legal Clinic." Although the United States Supreme Court has held that legislation may prohibit the use of trade names in professional practice, use of such names in law practice is acceptable so long as it is not misleading. If a private firm uses a trade name that includes a geographical name such as "Springfield Legal Clinic," an express disclaimer that it is a public legal aid agency may be required to avoid a misleading implication. It may be observed that any firm name including the name of a deceased partner is, strictly speaking, a trade name. The use of such names to designate law firms has proven a useful means of identification. However, it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm.
With regard to paragraph (d), lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves as, for example, "Smith and Jones," for that title suggests partnership in the practice of law.
CODE COMPARISON:
With regard to Rule 7.5(a), DR 2-102(B) provides that "A lawyer ... shall not use... professional cards ... letterheads, or similar professional notices or devices, ... (except) if they are in dignified form ... (and are limited to information) permitted under DR 2-105...." DR 2-102(B) provides that "A lawyer in private practice shall not practice under a trade name, a name that is misleading as to the identity of the lawyer or lawyers practicing under such name, or a firm name containing names other than those of one or more of the lawyers in the firm, except that ... a firm may use as ... its name the name or names of one or more deceased or retired members of the firm or of a predecessor firm in a continuing line of succession."
With regard to Rule 7.5(b), DR 2-102(D) provides that "A partnership shall not be formed or continued between or among lawyers licensed in different jurisdictions unless all enumerations of the members and associates of the firm on its letterhead and in other permissible listings make clear the jurisdictional limitations on those members and associates of the firm not licensed to practice in all listed jurisdictions; however, the same firm name may be used in each jurisdiction."
With regard to Rule 7.5(c), DR 2-102(B) provides that "A lawyer who assumes a judicial, legislative, or public executive or administrative post or office shall not permit his name to remain in the name of a law firm ... during any significant period in which he is not actively and regularly practicing law as a member of the firm...."
Rule 7.5(d) is substantially identical to DR 2-102(C).

MAINTAINING THE INTEGRITY OF THE PROFESSION
RULE 8.1 Bar Admission and Disciplinary Matters
An applicant for admission to the bar, or a lawyer in connection with a bar *390 admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.
COMMENT:
The duty imposed by this Rule extends to persons seeking admission to the bar as well as to lawyers. Hence, if a person makes a material false statement in connection with an application for admission, it may be the basis for subsequent disciplinary action if the person is admitted, and in any event may be relevant in a subsequent admission application. The duty imposed by this Rule applies to a lawyer's own admission or discipline as well as that of others. Thus, it is a separate professional offense for a lawyer to knowingly make a misrepresentation or omission in connection with a disciplinary investigation of the lawyer's own conduct. This Rule also requires affirmative clarification of any misunderstanding on the part of the admissions or disciplinary authority of which the person involved becomes aware.
This Rule is subject to the provisions of the Fifth Amendment of the United States Constitution and corresponding provisions of state constitutions. A person relying on such a provision in response to a question, however, should do so openly and not use the right of nondisclosure as a justification for failure to comply with this Rule.
A lawyer representing an applicant for admission to the bar, or representing a lawyer who is the subject of a disciplinary inquiry or proceeding, is governed by the rules applicable to the client-lawyer relationship.
CODE COMPARISON:
DR 1-101(A) provides that "A lawyer is subject to discipline if he has made a materially false statement in, or if he has deliberately failed to disclose a material fact requested in connection with, his application for admission to the bar." DR 1-101(B) provides that "A lawyer shall not further the application for admission to the bar of another person known by him to be unqualified in respect to character, education, or other relevant attribute." With respect to paragraph (b) of Rule 8.1, DR 1-102(A)(5) provides that "a lawyer shall not engage in conduct that is prejudicial to the administration of justice."
RULE 8.2 Judicial and Legal Officials
(a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.
(b) A lawyer who is a candidate for judicial office shall comply with the applicable provisions of the code of judicial conduct.
COMMENT:
Assessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for election or appointment to judicial office and to public legal offices, such as attorney general, prosecuting attorney and public defender. Expressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice.
When a lawyer seeks judicial office, the lawyer should be bound by applicable limitations on political activity.
To maintain the fair and independent administration of justice, lawyers are encouraged to continue traditional efforts to defend judges and courts unjustly criticized.
*391 CODE COMPARISON:
With regard to Rule 8.2(a), DR 8-102(A) provides that "A lawyer shall not knowingly make false statements of fact concerning the qualifications of a candidate for election or appointment to a judicial office." DR 8-102(B) provides that "A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer."
Rule 8.2(b) is substantially identical to DR 8-103.
RULE 8.3 Reporting Professional Misconduct
(a) A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority.
(b) A lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority.
(c) This rule does not require disclosure of information otherwise protected by Rule 1.6
COMMENT:
Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct. Lawyers have a similar obligation with respect to judicial misconduct. An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover. Reporting a violation is especially important where the victim is unlikely to discover the offense.
A report about misconduct is not required where it would involve violation of Rule 1.6. However, a lawyer should encourage a client to consent to disclosure where prosecution would not substantially prejudice the client's interests.
If a lawyer were obliged to report every violation of the Rules, the failure to report any violation would itself be a professional offense. Such a requirement existed in many jurisdictions but proved to be unenforceable. This Rule limits the reporting obligation to those offenses that a self-regulating profession must vigorously endeavor to prevent. A measure of judgment is, therefore, required in complying with the provisions of this Rule. The term "substantial" refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware. A report should be made to the bar disciplinary agency unless some other agency, such as a peer review agency, is more appropriate in the circumstances. Similar considerations apply to the reporting of judicial misconduct.
The duty to report professional misconduct does not apply to a lawyer retained to represent a lawyer whose professional conduct is in question. Such a situation is governed by the rules applicable to the client-lawyer relationship.
CODE COMPARISON:
DR 1-103(A) provides that "A lawyer possessing unprivileged knowledge of a violation of a Disciplinary Rule shall report such knowledge to ... authority empowered to investigate or act upon such violation."
RULE 8.4 Misconduct
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
*392 (e) state or imply an ability to influence improperly a government agency or official; or
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.
COMMENT:
Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists. The provisions of Rule 1.2(d) concerning a good faith challenge to the validity, scope, meaning or application of the law apply to challenges of legal regulation of the practice of law.
Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, agent and officer, director or manager of a corporation or other organization.
CODE COMPARISON:
With regard to Rule 8.4(a)-(d) DR 1-102(A) provides that "A lawyer shall not:
"(1) Violate a Disciplinary Rule.
"(2) Circumvent a Disciplinary Rule through actions of another.
"(3) Engage in illegal conduct involving moral turpitude.
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
"(5) Engage in conduct that is prejudicial to the administration of justice.
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
Rule 8.4(e) is substantially similar to DR 9-101(C).
There is no direct counterpart to Rule 8.4(f) in the Disclipinary Rules of the Code. EC 7-34 states in part that "A lawyer ... is never justified in making a gift or a loan to a judicial officer except as permitted by... the Code of Judicial Conduct." EC 9-1 states that "A lawyer should promote public confidence in our legal system and in the legal profession."
RULE 8.5 Jurisdiction
A lawyer admitted to practice or practicing in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere.
COMMENT:
In modern practice lawyers frequently act outside the territorial limits of the jurisdiction in which they are licensed to practice, either in another state or outside the United States. In doing so, they remain subject to the governing authority of the jurisdiction in which they are licensed to practice. If their activity in another jurisdiction is substantial and continuous, it may constitute practice of law in that jurisdiction. See Rule 5.5.
If the rules of professional conduct in the two jurisdictions differ, principles of conflict of laws may apply. Similar problems can arise when a lawyer is licensed to practice in more than one jurisdiction.
*393 Where the lawyer is licensed to practice law in two jurisdictions which impose conflicting obligations, applicable rules of choice of law may govern the situation. A related problem arises with respect to practice before a federal tribunal, where the general authority of the states to regulate the practice of law must be reconciled with such authority as federal tribunals may have to regulate practice before them.
CODE COMPARISON:
There is no counterpart to this Rule in the Code.
NOTES
[1] The Special Committee is composed of the following: Herschel H. Friday, Chairman, Phillip Anderson, John F. Stroud, Jr., H. William Allen, Howard W. Brill, J.C. Deacon, John A. Fogleman, John P. Gill, Jerry W. Cavaneau, Richard N. Moore, Jr.
[*] After adoption of this change by the House of Delegates of the Arkansas Bar Association on January 19, 1985, the Committee noted an inconsistency in Rule 7.2(b), which requires written communications to be kept for two years. The Committee believes that both rules, 7.2(b) and 7.3, should require the same period of retention, either two years or five years. The Committee recommends a period of five years.
[*] Copyright 1983 by the American Bar Association. All rights reserved. Permission to reprint granted by the American Bar Association.